Seymour ZUCKERBROD,
Plaintiff–Appellant,

v.

PHOENIX MUTUAL LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 542, Docket 95–7444.

United States Court of Appeals,
Second Circuit.

Argued Nov. 7, 1995.

Decided March 1, 1996.

Martin Zuckerbrod, Zuckerbrod & Taubenfeld, Cedarhurst, New York, for plaintiff-appellant.

Donald E. Watnick, New York City (Richard R. Lutz, Bret I. Parker, Townley & Updike, New York City, of counsel), for defendant-appellee.

Before: KEARSE, WINTER, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Plaintiff-appellant Seymour Zuckerbrod brought this action against his health insurance carrier, Phoenix Mutual Life Insurance Company ("Phoenix"), alleging that Phoenix failed to reimburse him for private duty nursing services. Following a bench trial, the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge*) entered judgment for the defendant, concluding that the plaintiff had failed to demonstrate that Phoenix's partial denial of benefits was arbitrary and capricious. On appeal, Zuckerbrod contends that the district court erred in so concluding. We agree and therefore vacate the judgment and remand the cause.

## BACKGROUND

The following facts, drawn primarily from the district court's opinion, are not disputed by the parties on appeal. The plaintiff obtained health insurance coverage from the defendant under a group policy issued to the plaintiff's employer, Kolortron Systems, Inc. In February 1990, while the policy was in force, the plaintiff underwent several opera-

tions at the New York University Hospital, including open heart surgery and a fasciotomy to his left leg. Following the surgery, the plaintiff was initially placed in the hospital's intensive care unit. The plaintiff's doctors recommended that the plaintiff hire around-the-clock private duty nurses to treat him when he was moved to another area of the hospital. The plaintiff therefore retained twenty-four-hour nursing services from March 2, 1990, through April 13, 1990, for which he was billed $27,675. Under the terms of the policy, plaintiff was entitled to receive eighty percent of covered expenses for private duty nursing care up to a maximum of $20,000 if the defendant determined that such nursing care was "essential, in our judgment, for the treatment of a Covered Person's Injury or sickness." The defendant's medical claims manual provides that any doubts with respect to claim determinations "should be resolved in favor of the claimant."

After Zuckerbrod filed a claim for reimbursement, the defendant informed him that it required copies of the notes kept by the private duty nurses and a letter of "medical necessity" from the doctor who ordered the nurses. The defendant indicated that once it received these items, it would submit them to its nurse consultant for review before making a determination on coverage for the nursing charges. The defendant acquired the nurses' notes, and Dr. Glenn W. Jelks, one of the plaintiff's doctors, provided the defendant with a letter of medical necessity dated June 4, 1990. Dr. Jelks's letter states that while hospitalized, the plaintiff "had an open left leg wound requiring daily intensive nursing care to prevent further bacterial contamination and possible loss of the leg. Special duty and private duty nurses were essential during this time to provide adequate intensive nursing care on a twenty four hour basis."

By letter dated June 29, 1990, the defendant notified Zuckerbrod that it was denying reimbursement for the charges submitted for private duty nurses from April 1 through April 13, 1990, because the care was "custodial in nature" and not "essential treatment" covered by the insurance policy. As for the charges from March 2 through March 31, one of the defendant's claims analysts referred the plaintiff's file to a nurse consultant, Linda Myco. The consultant reviewed the notes of the plaintiff's private duty nurses,[1] which described the nursing care they provided to the plaintiff, and Dr. Jelks's letter. On July 13, 1990, Myco advised that "[b]ecause [the plaintiff's nursing] care was extensive during a portion of the day, I would consider [medically necessary for the plaintiff's treatment] 1 shift per day" from March 3 through March 8, March 12 through March 28, and April 1 through April 4.

Shortly after Myco made this recommendation, the defendant received a second letter of medical necessity from another of the plaintiff's doctors, Dr. Arthur C. Fox, dated July 18, 1990. Dr. Fox's letter begins with a statement that he does "not recommend the employment of private duty nurses capriciously or often," then describes in great detail the plaintiff's condition and the reasons why private duty nurses were indeed necessary; he concludes by stating that "[t]here is absolutely no question that private duty nurses were essential to preservation of [the plaintiff's] leg, his sanity and even his life." The defendant's claims analyst testified at trial that she did not know whether this letter was ever submitted to Myco for her review.

Based on the consultant's recommendation, Phoenix advised the plaintiff by letter dated July 31, 1990, that "we are unable to provide all the benefits for the private duty nursing care. However, the nursing care was extensive during part of the day and we have considered one shift per day as necessary care for you." The letter did not specify whether the reimbursement was to be limited to specific dates. The defendant approved $6,075 worth of nursing services, representing payment for one nurse's services for one eight-hour shift per day. Because the plain-

---

1. The nurses' notes were not admitted into evidence in the district court and are not part of the record on appeal.

tiff's policy provided for eighty percent coverage, the defendant paid Zuckerbrod $4,860.

On August 3, 1990, the defendant had the plaintiff's file reviewed by an independent surgical consultant, Dr. Paul Flandreau, who opined as follows: "I believe that the care provided by an adequately staffed med[ical] sur[gical] nursing floor would be able to cover this gentleman's treatment. *The need for [private duty nurses] is the physician's choice based on his assessment of staffing adequacy.*" (Emphasis supplied.) Following Dr. Flandreau's report, the defendant did not modify its previous decision to provide coverage for only one shift of private duty nursing care per day.

The plaintiff filed this action on October 5, 1992. Because the insurance policy in this case was governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* the district court had jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). After a three-day bench trial, the district court found that the plaintiff had failed to demonstrate that the defendant's decision denying a substantial portion of the plaintiff's claim for reimbursement was arbitrary and capricious. The district court entered judgment in favor of the defendant on April 13, 1995. This appeal followed.

## DISCUSSION

■■■■ ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations. Drawing upon provisions of the Labor Management Relations Act and principles of trust law, courts have concluded that where, as here, an insurance plan gives its administrator broad discretion to determine whether a plan holder is entitled to payment of benefits for care he received, a court may reverse the administrator's decision only if it is arbitrary or capricious. *See, e.g., Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 111–12 (2d Cir.1995). Thus, the district court was required to consider "whether [the defendant's] decision was based on a consideration of the relevant factors and whether there has been a clear

error of judgment." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995) (quotation marks omitted). A district court "may not upset a reasonable interpretation by the administrator." *Id.* In applying the arbitrary and capricious standard, however, a court must weigh as a relevant factor whether an insurer operates under an inherent conflict of interest, by both administering a plan and paying benefits out of its own funds. *See Bruch,* 489 U.S. at 115, 109 S.Ct. at 956–57; *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995); *Jordan,* 46 F.3d at 1274. After a bench trial, we may not set aside the district court's findings of fact unless they are clearly erroneous. FED. R.CIV.P. 52(a); *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We review *de novo* the district court's application of those findings to draw the legal conclusion that the defendant's decision to deny benefits was not arbitrary or capricious. *See Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir. 1995).

■■ In this case, the court assumed that Phoenix pays benefits out of its own assets, but concluded that there was no evidence that Phoenix's decision was tainted by a conflict of interest. Asserting that the report of the defendant's surgical consultant, Dr. Flandreau, would in fact support a complete denial of the plaintiff's claim, the court found that the plaintiff had failed to demonstrate that Phoenix's decision was arbitrary and capricious. We disagree. Even if we accept the district court's finding that a conflict of interest did not taint Phoenix's decision—and therefore accord maximum deference to the decision of the plan's administrator—we conclude that the administrator's decision was arbitrary and capricious.

In determining whether to pay Zuckerbrod's claim, the defendant contends that it relied upon the reports of its nursing and surgical consultants, which in turn relied upon the notes of the private duty nurses who cared for Zuckerbrod and the doctors

overseeing Zuckerbrod's care.[2] The defendant claims that both consultants relied in preparing their reports at least in part upon the letters of the plaintiff's doctors, which provide no basis for concluding, as the defendant did, that private duty nurses were not needed at all, or were needed only during one shift of the day. Indeed, the letters of Dr. Jelks and Dr. Fox state that twenty-four-hour private duty nurses were "essential" for preserving the plaintiff's leg and even his life.[3] Nothing in these letters suggests that private duty nursing was only necessary during part of the day.

To the extent that the defendant relied upon Dr. Flandreau's report, we disagree with the district court's conclusion that the report can be interpreted to suggest that private duty nursing was not medically necessary for the plaintiff's treatment and would have supported a complete denial of the plaintiff's claim. In his report, Dr. Flandreau indicated only that "an *adequately staffed* [medical surgical] nursing floor" would have been able to provide for the plaintiff's needs and that the adequacy of the available nursing service was to be assessed by the treating physician. (Emphasis supplied.) Dr. Flandreau's report says nothing about the medical necessity of private duty nursing for this patient in the particular circumstances he faced, and the letters of the plaintiff's treating physicians can only be interpreted as reflecting their belief that the regular nursing staff was inadequate to meet Zuckerbrod's needs.

In addition, by authorizing one shift of private duty nursing for most days Zuckerbrod was hospitalized, Myco apparently concluded that for at least part of the time during each day authorized, the regular nurse staffing was inadequate to meet Zuckerbrod's needs. Myco did not, however, indicate why private nursing care would have been necessary during only one shift or during a particular shift. The defendants appear to concede that there would be no basis for a conclusion that Zuckerbrod's need for care was restricted to a particular shift. *See* Appellee's Brief at 13 ("Ms. Myco's report did not state that Zuckerbrod's need for private nurses was specific to a set time or shift. Her statement that she 'would consider' as necessary one shift of nurses . . . meant that this need could be fulfilled irrespective of the precise time or shift that the private nurses worked.").

At oral argument, the defendant's counsel confirmed that if there were a significant need for private duty nursing at some time during each of the three shifts, then Phoenix would be required under the policy to reimburse the plaintiff for such nursing in all three shifts. Based on Myco's conclusion that private nursing was necessary during some portion of the day—and the absence of any basis for concluding that the need was confined to a particular shift—the defendant's partial denial of coverage was arbitrary and capricious. In light of Myco's determination that Zuckerbrod's care was extensive, the defendant's concessions, and the defendant's policy of resolving doubts in claim determinations in favor of the claimant, we believe that the record conclusively establishes that the plaintiff is entitled to reimbursement of eighty percent of the cost, subject to the $20,000 limitation provided by the insurance policy, of all three shifts of private duty nurses on the days for

**2.** The plaintiff claims that the report of the surgical consultant, Dr. Flandreau, cannot be used to support Phoenix's denial of the claim, because it was not issued until *after* Phoenix sent a letter to the plaintiff advising that two-thirds of the coverage requested would be denied. The defendant contends that Dr. Flandreau's review was triggered by an inquiry from the plaintiff regarding the partial denial of his claim, and that it relied on the report in adhering to its prior determination—*i.e.*, its decision was not "final" until after Dr. Flandreau's report. There is some evidence in the record supporting this position, and it was therefore not clear error for the district court to treat the insurer's ultimate decision as having been rendered after Dr. Flandreau's review.

**3.** It is not clear from the record whether Myco considered Dr. Fox's letter of July 18, which was dated five days after she rendered her preliminary recommendation. Nonetheless, the defendant claims to have fully considered the letter prior to denying the claim. There was testimony to the effect that such a letter would, as a matter of course, have become part of Zuckerbrod's file, which was ultimately submitted to Dr. Flandreau for his review.

which reimbursement was made for one shift.[4]

We note that Myco restricted her recommendation to cover one shift to particular dates: March 3 through March 8, March 12 through March 28, and April 1 through April 4. For March 9 through March 11 and March 29 through March 31, it is not clear from the record: (1) whether the plaintiff was billed for any services; (2) if so, whether or not Phoenix reimbursed the plaintiff for one shift; and (3) if not, whether there was a reasonable basis for its decision. For April 5 onward, Myco concluded that there was "no indication of need" for private duty nursing services. No basis for Myco's conclusion in this regard appears in the current record.[5]

We leave it to the district court to address these matters. The court shall determine whether the plaintiff incurred costs for private nursing services on days for which no reimbursement was granted. If so, the district court shall determine whether the record before Phoenix at the time of its decision supplies any reasonable basis—in light of the conclusion of the defendant's nurse consultant that medical necessity existed for most of the plaintiff's post-operative care period—for denying payment of those services.

### CONCLUSION

For the reasons stated above, the judgment of the district court is vacated. The cause is remanded to the district court. The plaintiff is entitled to payment for three shifts of private duty nursing services on all dates for which reimbursement was made for one shift. The district court shall also deter-

mine whether the plaintiff was denied reimbursement on other dates and whether a reasonable basis for such a denial appeared in the record before the defendant at the time of its decision.

Vacated and remanded.

---

4. While we conclude that the plan administrator's decision was arbitrary and capricious, we do not find that, under the circumstances of this case, it is appropriate for the district court to direct the plan administrator to reconsider Zuckerbrod's claim. *Cf. Miller v. United Welfare Fund,* 72 F.3d 1066, 1073–74 (2d Cir.1995). In *Miller,* a panel of this court found further consideration by a fiduciary appropriate where: (1) the claimant sought in the district court to introduce evidence not previously considered by the fiduciary; and (2) the fiduciary had failed to consider the full administrative record before it. *See id.* at 1071–73. *Miller* acknowledged that further consideration by a fiduciary may in some circumstances be a "useless formality." *Id.* at 1071 (quotation marks omitted). Such is the case

here, where the difficulty is not that the administrative record was incomplete, but that a denial of benefits based on the record was unreasonable.

5. We note that the district court does not currently have the full administrative record before it, because the nurses' notes purportedly considered by Phoenix's nurse consultant were not introduced into evidence. It may be that these notes would furnish a reasonable basis for Myco's conclusion that private duty nursing coverage was unnecessary for certain days, and we encourage the district court to reopen the record to consider this possibility.