**Anthony MAIDA, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA,**
**Defendant.**

**No. 96 Civ. 3621 (LAK).**

United States District Court,
S.D. New York.

Jan. 2, 1997.

John A. Aberasturi, Wilkofsky, Friedman, Karel & Cummins, for Plaintiff.

Kevin G. Horbatiuk, Robin, Rome, Goldfarb & Lloyd, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an action to recover damages by reason of defendant's allegedly wrongful termination of disability benefits to plaintiff, who was covered under a policy of insurance issued for the benefit of employees of Raytheon Engineers and Constructors, Inc. ("Raytheon"). Defendant counterclaims to recover $10,155 pursuant to an agreement with plaintiff under which plaintiff is obliged to reimburse defendant for duplicate disability benefits received from other sources. Defendant moves for summary judgment dismissing the complaint and on its counterclaim.

### Facts

On August 4, 1994, plaintiff Anthony Maida slipped and fell on a wet floor in a restroom in Raytheon's offices, where he was employed as a billing and cost manager, and sustained injuries diagnosed by his treating physicians as including acute cervical derangement, contusion sprain of both elbows,

acute lumbrosacral derangement, contusion of both buttocks, and contusion sprain of the right tendon achilles. Diagnostic testing revealed disc space narrowing at C6–C7 and C7–T1 and degenerative disc disease in the lower lumbrosacral spine. On February 8, 1995, Mr. Maida submitted a questionnaire in support of an application for long term disability benefits under a policy of group insurance issued by the defendant Life Insurance Company of North America ("LINA") to Raytheon. By letter dated March 13, 1995, LINA advised Mr. Maida that his application had been approved and began paying benefits, retroactive to February 1, 1995.

LINA subsequently received from Raytheon a copy of a report, dated January 20, 1995, of a medical examination conducted by Dr. Edward Torriello on behalf of Raytheon's workers' compensation carrier. (Horbatiuk Aff. ¶ 10 & Ex. J) Dr. Torriello reported that Mr. Maida exhibited a limited range of motion in his shoulders until distracted, at which time his range of motion was full and pain free. He concluded that "Mr. Maida's examination is filled with inconsistencies" and that "he reveals no objective evidence of continued disability from the orthopedic injuries sustained in the accident. He is presently able to perform the duties of his occupation."

Dr. Torriello's report and other records thereupon were reviewed for LINA by Dr. T.A. Franz. He commented that the examination (conducted by Dr. Torriello) and the neurologic assessment (conducted by one of Mr. Maida's physicians [1]) "are poor in their delineation of findings (the IME) or in their believability—neuro consult" and recommended a functional capacity examination to better document Mr. Maida's condition. He observed also that "[t]his sort of injury should limit Mr. Maida to light or sedentary duties at most" and that his job was "in this range." (Id. Ex. K)

LINA thereupon sent Mr. Maida to a physical therapist, Larry J. Kopelman, who conducted a functional capacity examination on May 2 and 3, 1995. Mr. Kopelman's report concluded that Mr. Maida "shows a greater ability to work than he demonstrates" and that he performed inconsistently from test to test or from day to day. He found also that Mr. Maida was able to maintain various "work" positions for prolonged periods. (Id. Ex. L)

On June 1, 1995, LINA advised Mr. Maida that it had concluded, based upon the findings of Dr. Torriello and Mr. Kopelman, that he was not totally disabled within the meaning of the policy. (Id. Ex. N) Mr. Maida appealed and submitted copies of notes from examinations by his treating physicians on March 27 and May 15, 1995 as well as a copy of a letter from the Social Security Administration finding that he was totally disabled. LINA rejected the appeal on July 25, 1995, noting that the information submitted stated that Mr. Maida suffered from back pain but did not support his claim of inability to perform the duties of his job. (Id. Ex. O)

Mr. Maida then retained counsel who forwarded various medical records to LINA in support of the disability claim. On October 4, 1995, LINA again rejected the claim, pointing out that the records submitted already had been considered by it. It did, however, invite counsel to submit more current records documenting the claimed condition if he did not agree with its conclusion. (Id. Ex. P)

At that point, Mr. Maida changed course. He submitted no further evidence of physical inability to perform his duties. Rather, counsel submitted letters from a psychiatrist, dated October 30, 1995 and December 21, 1995, which opined in identical language that Mr. Maida was suffering from post-traumatic stress disorder. The letters differed only in that the later version contained the statement that "Mr. Maida is totally disabled and unable to perform any type of work." (Id. Ex. Q)

On February 5, 1996, LINA again denied the claim. Although it acknowledged the existence of a medical condition, it observed

---

**1.** The neurological report contained in Mr. Maida's claim file (Horbatiuk Aff.Ex. D) was prepared by E.C. Zuckerman, M.D., at the request of plaintiff's treating physicians. A more specific record reference within the large claim file is impossible because counsel did not number the pages.

that there was no objective evidence of any continuing disabling condition and that the "documentation does not support your inability to perform the duties required of your occupation ..." It observed that the psychiatrist's letters had stated that Mr. Maida's speech was logical and coherent and that the treatment for the claimed mental condition "appears to have been limited to only once a month." The letter concluded by notifying Mr. Maida of his right to request reconsideration, noting also that LINA would need objective medical documentation in order to change its decision. (*Id.* Ex. R).

Mr. Maida responded by commencing this action in New York Supreme Court, New York County, on or about April 8, 1996. LINA removed the action to this Court and counterclaimed for $10,155, which represents the amount of benefits Mr. Maida received for which he also received Social Security disability payments.[2]

*Discussion*

*Plaintiff's Claim*

*Scope of Review*

Although plaintiff commenced this action in state court and asserted only state claims, it is undisputed that the group insurance policy at issue falls within the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and that the case is governed entirely by that statute, which broadly preempts state law in this field. *See Pilot Life Insurance Co. v. Dedeaux,* 481

U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1545–46, 95 L.Ed.2d 55 (1987); 29 U.S.C. §§ 1003(a) (ERISA applies to any employee benefit plan established or maintained by employers engaged in commerce); 1144(a) (preemption clause). Plaintiff's claim therefore in substance is an action to recover benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).

 Actions challenging the denial of benefits are subject to the standard of review announced in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court there held that district court review is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956–57. In the latter event, the issue for district court determination is whether the decision in question was arbitrary and capricious. *E.g., Zuckerbrod v. Phoenix Mutual Life Insurance Co.,* 78 F.3d 46, 49 (2d Cir. 1996); *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir.1995). In this case, the parties agree that the Raytheon plan of which the disability policy was a part conferred discretion on LINA and that review is governed by the arbitrary and capricious standard.[3]

*The Merits*

Plaintiff makes two attacks on LINA's decision. First, he contends that it "based its

---

**2.** Mr. Maida executed an agreement pursuant to which he acknowledged LINA's right to reduce his benefits by the amount of any Social Security award and undertook to reimburse LINA for any overpayment. (Horbatiuk Aff. ¶ 26 & Ex. T)

**3.** Where the plan administrator or fiduciary whose decision is attacked labors under a conflict of interest, the existence of the conflict may affect the level of scrutiny at which the arbitrary and capricious review is conducted. *See Firestone Tire and Rubber Co.,* 489 U.S. at 115, 109 S.Ct. at 956–57; *Sullivan v. LTV Aerospace and Defense Co.,* 82 F.3d 1251, 1255–56 (2d Cir. 1996); *Zuckerbrod,* 78 F.3d at 49; *Velez v. Prudential Health Care Plan of New York, Inc.,* 943 F.Supp. 332, 339–40 (S.D.N.Y.1996). Plaintiff does not here claim that LINA had a conflict of interest, much less that any conflict "was suffi-

ciently serious to cause a breach of [its] fiduciary obligation to the beneficiary." *Velez,* 943 F.Supp. at 341. The fact that LINA is an insurer does not establish that it labored under a conflict of interest because the existence of "insurance" arrangements in which the carrier in substance operates essentially as a claims administrator for the "insured," which pays a retrospective premium that reimburses the carrier for losses plus a fee for its services, is well known. *See, e.g., Fireman's Fund Insurance Cos. v. Siemens Energy & Automation, Inc.,* 948 F.Supp. 1227, 1229 (S.D.N.Y.1996)). Nor of course has he claimed that LINA's decision in fact was influenced by any conflict. *See Sullivan,* 82 F.3d at 1257; *Velez,* 943 F.Supp. at 341 n. 3. In these circumstances, the Court applies the arbitrary and capricious standard, unaffected by any consideration of conflicts. *See Pagan,* 52 F.3d at 442–43.

decision to deny benefits on the examination by a physical therapist, rather than a medical doctor." (Pl.Mem. 2) Second, he argues that LINA failed to consider his evidence of mental disability. (*Id*)

### The Physical Disability Claim

■ The contention that LINA acted inappropriately in its use of Mr. Kopelman's report is without merit. For one thing, it did not rely on Mr. Kopelman alone in concluding that plaintiff was not unable to perform the duties of his job. Dr. Torriello, the physician who examined Mr. Maida for Raytheon's workers' compensation carrier, reported that Mr. Maida was "in no acute distress," that he had a full range of pain-free motion, and that he found "no objective evidence of continued disability." He wrote that Mr. Maida was "presently able to perform the duties of his occupation." Indeed, LINA was entitled to construe his report as indicating the opinion that Mr. Maida was malingering or exaggerating his claimed disability. LINA's June 1, 1995 letter denying plaintiff's claim specifically relied upon Dr. Torriello as well as Mr. Kopelman. To suggest, given this record, that "Defendant based its decision to deny benefits on the examination by a physical therapist, rather than a medical doctor" is to take inappropriate liberties with the record.

■ In reviewing LINA's decision, the Court must consider whether LINA took into account the relevant factors. *E.g., Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir.1995). The issue is whether the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir.1995) (quoting *Pagan*, 52 F.3d at 442) (internal quotation omitted). "Substantial evidence in turn 'is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker] ... requires more than a scintilla but less than a preponderance.'" *Id.* (quoting *Sandoval v. Aetna Life & Casu-*

*alty Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992)).

LINA's rejection of the claim of physical disability may not be characterized as arbitrary and capricious under this deferential standard. While Mr. Maida submitted evidence supporting, at least to some extent, his claim of physical disability, LINA was not obliged to credit that evidence given the strong contrary evidence at its disposal in the form of the reports of Dr. Torriello [4] and Mr. Kopelman.

■ Plaintiff seeks to avoid this conclusion by attacking the sufficiency of the examination conducted by Dr. Torriello and contending that Mr. Kopelman wrote a negative report only after plaintiff declined his offer to become plaintiff's physical therapist. (Maida Reply Aff. at 2–3) There is no suggestion, however, that these assertions were brought to LINA's attention at any point. As review of a benefit denial under the arbitrary and capricious standard is limited to the record that was before the decision maker, they may not be considered in this Court. *Miller*, 72 F.3d at 1071.

■ Plaintiff's final contention is that summary judgment in favor of LINA is premature because he has not yet deposed the claims adjuster and the physical therapist. (Pl.Mem. 5) Rule 56(f), FED.R.CIV.P., provides in relevant part:

> "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Here, plaintiff has submitted no affidavit. Even passing over this defect, however, his argument is without merit.

---

**4.** Plaintiff attacks LINA's reliance on Dr. Torriello by asserting that "Defendant's own doctor, Dr. Franz, admits that the report is not believable." (Aberasturi Reply Aff. ¶ 12) The statement is in-

correct. As a review of Dr. Franz's note reveals, it was plaintiff's neurologist whom he characterized as not believable. (Horbatiuk Aff.Ex. J)

■ This Circuit adheres to a four-part test for determining the sufficiency of an affidavit requesting additional discovery in order to respond to a summary judgment motion:

> "The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994). *Accord, e.g., Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989).

Plaintiff here has made no showing as to how the deposition of the claims adjuster reasonably might be expected to raise a genuine issue of material fact. While he does not say so, he presumably wants the deposition of the physical therapist in an effort to corroborate his own assertion that the negative report followed on plaintiff's refusal to become a client of the therapist. But the deposition is unnecessary for that purpose because plaintiff's own affidavit suffices to raise that issue which, in any case, is immaterial for the reasons already articulated. Nor has plaintiff offered any explanation for failing to bring his contention regarding the physical therapist to LINA's attention before filing suit. In consequence, there is no basis for deferring resolution of the physical disability claim pending additional discovery.

In sum, there is no basis for disturbing LINA's conclusion that Mr. Maida was not totally disabled within the meaning of the policy by reason of his physical condition.

### The Mental Disability Claim

■ Mr. Maida's claim of mental disability appears to have been an afterthought, first having been made well after the rejection of his contention that his physical injuries rendered him totally disabled. It therefore is not entirely surprising that there is little in the record bearing on the subject.

Apart from the conclusory assertion at the end of the second of his two otherwise identical letters to the effect that Mr. Maida was totally disabled, Dr. Mannucci provided little support for Mr. Maida's claim. The letters described the accident and plaintiff's claimed physical symptoms. They summarized Mr. Maida's reports that he had become irritable, ashamed, and apathetic and that he was "generally in a depressed mood." They reported that "[h]is attitude and facial expression conveyed a feeling of gloominess and intense worrying." And they concluded with a diagnosis of post-traumatic stress disorder. Nevertheless, the second letter does contain an unqualified assertion by a trained professional stating that Mr. Maida, at least as of the date of the letter, was totally disabled.

In rejecting the claim, LINA had no comparable evidence before it. The benefit analyst—who, as far as the record discloses, was not a qualified professional—focused on the belated addition of the conclusion of total disability contained in the second letter, the infrequency of treatment, and Dr. Mannucci's report that Mr. Maida's "speech was logical and coherent." This simply is not enough.

*Miller* is instructive. In that case, a benefit plan's insurer rejected a claim for private duty nursing costs incurred following complicated coronary bypass surgery which was supported by a detailed letter from the cardiologist for plaintiff's testatrix. Its only basis for doing so was the conclusion of a claims reviewer. The executor appealed the denial to the plan's trustees, who rejected the appeal solely on the basis of a three-sentence report by the plan administrator, who lacked any medical background. The trustees' rejection letter claimed, without benefit of any supporting medical advice, that the services performed by the private duty nurses could have been performed by the hospital's general nursing staff. The Second Circuit held that the plan's rejection of plaintiff's appeal was arbitrary and capricious because it was not supported by substantial evidence and was not "'based on a consideration of the relevant factors.'" *Id.* at 1072 (quoting *Jordan,* 46 F.3d at 1271); *see also Zuckerbrod,* 78 F.3d 46 (denial of private duty nursing expenses based on conclusion by reviewing nurse that services not medically necessary, contrary to opinion of treating physician, was arbitrary and capricious).

The same factors relied upon by the Court of Appeals in *Miller* apply here. Dr. Mannucci's second letter, while less than overwhelming, on its face supported plaintiff's claim of total disability. While it may be understandable for LINA to have been suspicious of the letter, coming as late as it did, LINA's conclusion that Dr. Mannucci's opinion was baseless was pure speculation. At no point did LINA have Mr. Maida examined by a qualified psychiatrist or, for that matter, submit Dr. Mannucci's letters to any medically qualified person. Hence, its decision is a paradigm of arbitrary and capricious action, unsupported by substantial evidence.

The fact that LINA's rejection of the claim of mental disability was arbitrary and capricious does not mean, however, that Mr. Maida's claim necessarily should have been granted. The Court is in no position to say that LINA, upon the receipt of additional evidence, could not reasonably reject the claim. Nor can it hold at this point that the claim must be granted. *Compare Zuckerbrod*, 78 F.3d at 51 n. 4, *with Miller*, 72 F.3d at 1073–74. Accordingly, the claim of total disability based upon the asserted post-traumatic stress disorder will be returned to LINA for reconsideration. *Miller*, 72 F.3d at 1073–74.

### The Counterclaim

The insurance policy here in question provided that LINA was entitled to deduct from benefits paid to the plaintiff any disability benefits received by him from other sources. After he initially qualified for benefits from LINA, plaintiff opted to have LINA pay his benefits without deduction of LINA's estimate of other prospective benefits subject to an undertaking on his part to reimburse LINA for any overpayment. Plaintiff subsequently received a retroactive award of Social Security disability benefits.

It is undisputed that plaintiff was overpaid in the aggregate amount of $10,155 and that LINA is entitled to recover that sum.

### Disposition

■ Given the resolution of the counterclaim and the Court's conclusion that the mental disability claim must be returned to the defendant for reconsideration, the issue arises whether the proper disposition of the case is to enter final judgment or to retain jurisdiction pending the defendant's decision on remand.

The statute, 29 U.S.C. § 1132(a)(1)(B), provides only that one may bring an action in a district court to recover benefits allegedly due under an ERISA plan. Read in isolation, it would suggest that the Court simply should grant partial summary judgment with respect to the claim of physical disability and the counterclaim, deny summary judgment with respect to the claim of mental disability, and proceed with the case. But to reach that conclusion so readily would ignore the structure governing review of benefit determinations that has been engrafted onto the statute by judicial decisions.

In the ordinary civil action, the denial of summary judgment necessarily implies the existence of a genuine issue of material fact for determination by the court. It is followed by further proceedings, ordinarily including a trial. But this is so in an ERISA case only where the scope of review under *Firestone Tire and Rubber Co.* is *de novo*. In a case like this one, in which review is governed by the arbitrary and capricious standard, the failure of the plan administrator or fiduciary to prevail on a motion for summary judgment will result either in the entry of judgment for the plaintiff, as in *Zuckerbrod*, or in a remand to the plan decision maker, as in *Miller* and this case. In the first of these circumstances, final judgment is entered for the plaintiff. But unlike the ordinary civil case, the denial of summary judgment in the second circumstance may leave nothing to be done by the district court. If the plan on reconsideration grants the benefit claim, the controversy is concluded. If it does not, the plaintiff may, but need not, seek review. And if the plaintiff does so, the review is of a new decision typically based on an expanded record. In a real sense, the correctness of the original benefit denial that first brought the case to the district court drops away, and the issue will be whether the decision on remand was arbitrary and capricious in light of the expanded record. The question for this Court therefore is whether to view its decision to remand as a

final disposition of the matter presented by the original complaint and to enter judgment accordingly or, alternatively, to retain jurisdiction of the matter pending the outcome of the remand proceeding.

This question has been raised in previous cases. Several district courts have retained jurisdiction pending remand, some staying proceedings in the interim. *Rakoczy v. Travelers Insurance Co.*, 914 F.Supp. 166, 172 (E.D.Mich.1996); *Rutledge v. American General Life and Accident Insurance Co.*, 871 F.Supp. 272, 278 (N.D.Miss.1994); *Copeland v. Carpenters District Council of Houston and Vicinity Pension Fund*, 771 F.Supp. 807, 810 (E.D.Tex.1991); *Pickett v. United Mine Workers of America Health and Retirement Funds*, 467 F.Supp. 2, 4 (E.D.Tenn. 1978); *see Baker v. United Mine Workers of America Health and Retirement Funds*, 929 F.2d 1140, 1142–44 (6th Cir.1991). At least one has regarded the remand as a final disposition closing the case. *Teeter v. Supplemental Pension Plan of Consolidated Rail Corp.*, 705 F.Supp. 1089, 1097 (E.D.Pa.1989). None, however, has advanced a rationale in support of either result.

The argument in favor of regarding the remand as a final disposition which closes the case rests substantially on the notion that cases ought not to remain on the dockets of the district courts in circumstances where the district courts do not have the same ability to bring them to judgment as they do in ordinary civil actions. The pendency of such cases poses some additional burdens on court staff in checking periodically on their status and insuring that the cases ultimately are terminated if benefits are granted on remand or moved to final resolution if they are not. It also arguably inflates somewhat the data concerning the numbers of cases pending in the district courts.

Three arguments cut in the other direction. First, if this decision were treated as a final disposition of this matter and plaintiff proves unsuccessful on remand, plaintiff would be obliged to pay another filing fee in order to obtain district court review. It is doubtful that Congress intended to erect such an additional barrier to obtaining review of benefit denials, particularly where, as here, the remand has not been necessitated by any action or omission by the plaintiff.

Second, treating this decision as a final disposition would raise the question whether the present determination is a final judgment appealable to the court of appeals as a matter of right under 28 U.S.C. § 1291 and, if it is, require that the court of appeals decide a controversy that may be eliminated if the defendant rules in plaintiff's favor on remand. The well established policy against piecemeal appeals thus counsels against according finality to this decision.

The final consideration is one that applies only in those cases in which the defendant has obtained a favorable determination of a counterclaim. The entry by the district court of final judgment at this stage would expose the plaintiff to enforcement of the judgment on the counterclaim despite the lack of ultimate resolution of his claim that the defendant owes him unpaid benefits. At least on the facts of this case, that would be inappropriate.

Taking all of these considerations into account, the Court concludes that the appropriate course of action is to retain jurisdiction over this case pending the outcome of the remand while at the same time ensuring that the remand is dealt with expeditiously.

### Conclusion

Defendant's motion for summary judgment is granted to the extent that (a) defendant is awarded judgment against plaintiff on its counterclaim in the amount of $10,155, and (b) plaintiff's claim that he was entitled to disability benefits on the theory that he was physically disabled is dismissed. The motion otherwise is denied. The defendant's rejection of plaintiff's claim for disability benefits on the theory that he is totally disabled by reason of post-traumatic stress disorder is vacated and the matter returned to the defendant for reconsideration of that claim. The plaintiff shall submit to a psychiatric examination within 30 days of the date of this decision if requested to do so by the defendant. Unless the defendant grants plaintiff's disability claim within 21 days after the date of any such examination, it shall provide

plaintiff, within the 21 day period, with the report of the examination and any other information upon which it intends to rely in acting upon the claim. Plaintiff within 21 days after receipt of any such materials may submit additional evidence to rebut any evidence upon which the defendant could rely to deny benefits. *See Miller,* 72 F.3d at 1074. The defendant shall grant or deny plaintiff's claim within 30 days of the earlier of (a) the expiration of the period within which the plaintiff may submit rebuttal evidence, or (b) the submission of any such evidence. The parties are directed to report the status of the remand to this Court by letter on the 60th and 120th days after the date hereof. All other proceedings before this Court are stayed pending further order of the Court and the case is placed in the suspense docket.

SO ORDERED.