**Marie KIRK, Plaintiff–Appellant,**

v.

**The READERS DIGEST ASSOCIA-TION, INC. Severance Plan and Gary S. Rich, as Plan Administrator of the Readers Digest Association, Inc. Severance Plan, Defendants–Appellees.**

**Docket No. 02–7077.**

United States Court of Appeals, Second Circuit.

Jan. 29, 2003.

Marianne F. Murray, Rosner & Murray, New York, N.Y., for Plaintiff–Appellant (on submission).

Howard L. Ganz, Tracey I. Levy, Proskauer Rose LLP, New York, N.Y., for Defendants–Appellees (on submission).

Present: NEWMAN, Honorable KATZMANN, and RAGGI, Circuit Judges.

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (McMahon, *J.*), it is hereby

**ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED.**

Plaintiff-appellant Marie Kirk appeals the District Court's grant of summary judgment dismissing her complaint with prejudice.

Kirk began working in the accounting group of Reader's Digest Association, Inc. ("RDA") on March 4, 1996. In a letter dated November 9, 1999, Joanne Prifti, Associate Director of Human Resources for RDA, informed Kirk that her employment would be terminated effective December 14, 1999. Kirk's eligibility to receive severance pay was conditioned upon her execution of a General Waiver and Release of Claims form (the "Waiver"). The Waiver provides, as relevant here, that Kirk would be denied severance benefits, and would have to return any severance payments previously made, if RDA finds that she "acted in a matter detrimental to the best interests of RDA, including ... disparaging RDA [or] its employees." Kirk executed the Waiver on November 30, 1999.

Kirk's Severance Plan with RDA sets forth a procedure for internally reviewing the denial of severance benefits, in accordance with the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Under the Severance Plan, "[t]he Senior Vice President, Human Resources is the Plan Administrator of the Severance Plan, and shall have the full discretionary authority to interpret, administer and apply the plan. The Plan Administrator's decisions with respect to the plan shall be binding on all parties." Defendant-appellee Gary S. Rich was the Senior Vice President of Human Resources for RDA, and thus the Plan Administrator, at the time relevant to this appeal.

In a letter dated December 17, 1999, Prifti informed Kirk that she would not receive severance pay because RDA had discovered that Kirk had breached the Waiver by making disparaging remarks about the company to Joe Urrico, an individual who had accepted a position at RDA. Kirk appealed this determination in a letter dated April 5, 2001, at which point Rich, as Plan Administrator, launched an investigation and review of her claim. On June 4, 2001, Rich invited Kirk to submit additional documents or information for his consideration. Rich's investigation entailed reviewing documents submitted by

Prifti and interviewing Kirk, Urrico, and Nancy Reilander of Madison Davis, the firm retained by RDA that recruited Urrico. Rich's findings, which were transmitted to Kirk in a letter dated August 2, 2001, included the following:

8. Shortly after your execution of the Waiver, Chief Financial Officer George Scimone was advised by a recruiter at Madison Davis that you had made various disparaging remarks about RDA to Joe Urrico, who at the time ... had ... accepted an offer to work at RDA.

* * *

11. According to Urrico, and as reflected in Prifti's notes from her conversation with Reilander and an e-mail message prepared by [a former Vice President of Human Resources for RDA] that references some of the remarks, you told Urrico that there were no qualified people at RDA, that Urrico could expect to work late hours, that there was no quality of life at RDA and that you would not hire anyone from RDA.... Also according to Urrico, you made various disparaging remarks about specific RDA employees....

12. As a result of your conversation with Urrico, Urrico called Madison Davis and asked very pointed questions about RDA and certain RDA employees. He had to be reassured about coming to RDA.

Based on these findings, Rich upheld the denial of Kirk's severance benefits because of her breach of the Waiver.

Kirk commenced the instant action on August 27, 2001 against RDA Severance Plan and Rich, in his capacity as Plan Administrator. Kirk alleged that RDA's refusal to make the severance payments constituted a wrongful denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), and that Rich's determination was arbitrary and capricious. Kirk further contended that Rich had a conflict of interest arising from his dual positions of Senior Vice President of Human Resources, the department which initially denied her severance payments, and Plan Administrator who reviewed that denial.

The defendants moved for a judgment on the pleadings, and Kirk cross-moved for summary judgment. After converting the defendants' motion into a summary judgment motion, the District Court granted the defendants' motion and denied Kirk's motion. In so ruling, the court rejected Kirk's argument that Rich had an actual conflict of interest that affected his decisionmaking because she failed to offer evidence of any conflict.

On appeal, Kirk argues that we should reject the District Court's adoption of the Plan Administrator's conclusions. Kirk contends that, because Rich operated under a conflict of interest that affected his determination, we should review *de novo* her entitlement to severance benefits. Kirk also urges us to revisit our earlier decision in *Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir.1995), which, Kirk contends, poses an insurmountable burden on ERISA plaintiffs in cases of conflicted administrators.

We review *de novo* the District court's grant of summary judgment, drawing all inferences in favor of and examining the evidence in the light most favorable to the non-moving party. *Int'l Business Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 423 (2d Cir.2002). Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under ERISA, a pension plan participant or beneficiary may bring a civil action "to recover benefits due to him under the

terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (2000). The Supreme Court held in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." We later explained in *Pagan* that "where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" 52 F.3d at 441 (citing *Bruch*, 489 U.S. at 115). The administrator bears the burden of showing that this deferential review applies. *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir.2002).

The Severance Plan undoubtedly conferred discretionary authority to the Plan Administrator to determine eligibility so as to trigger *Pagan's* "arbitrary and capricious" standard. The Plan expressly provides that "[t]he Senior Vice President, Human Resources is the Plan Administrator of the Severance Plan, and shall have the full discretionary authority to interpret, administer and apply the plan. The Plan Administrator's decisions with respect to the plan shall be binding on all parties."

We therefore turn to whether Rich's conclusions were arbitrary and capricious. Under this standard, "we may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442 (citations and quotation marks omitted). We explained in *Pa-*

*gan* that "[t]his scope of review is narrow, thus we are not free to substitute our own judgment for that of the [Plan Administrator] as if we were considering the issue of eligibility anew." *Id.; see also Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 117 (2d Cir.2002) ("It is well established that federal courts have a narrow role in reviewing the discretionary acts of ERISA plan administrators."). The District Court thus was required to consider whether the Plan Administrator's "decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," mindful that the court was not allowed to "upset a reasonable interpretation by the administrator." *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996) (citation and quotation marks omitted). In sum, although we review *de novo* the District Court's conclusion, in doing so we review the Plan Administrator's decision under the arbitrary and capricious standard. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1070–71 (2d Cir.1995).

Applying this standard, we find substantial evidence to support the Plan Administrator's affirmance of the denial of Kirk's severance benefits. *See Pagan*, 52 F.3d at 442 (instructing that a decision is arbitrary and capricious if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law") (citation and quotation marks omitted); *cf. Miller*, 72 F.3d at 1072 (finding an administrator's decision arbitrary and capricious because of the absence of substantial evidence). The record reflects that the Plan Administrator conducted a thorough investigation that included interviewing the relevant individuals (Kirk, Urrico, and Reilander) and reviewing various documents provided by Prifti. From this investigation, Rich learned that Kirk "made various disparaging remarks about RDA to Joe Urrico" when Urrico had accepted a posi-

tion at RDA. Urrico also informed Rich that Kirk made "disparaging remarks about specific RDA employees." Although Kirk refuted Urrico's version of the conversation, we cannot say that Rich was arbitrary and capricious in deciding to credit Urrico rather than Kirk. Urrico's version was consistent with both correspondences prepared by RDA employees after the alleged conversation and with Urrico's subsequent actions (*i.e.*, asking pointed questions about RDA). By contrast, Kirk was inconsistent in various accounts of her conversation with Urrico. In sum, because the conduct reflected in Rich's findings clearly supported a conclusion that Kirk had "acted in a manner detrimental to the best interests of RDA" by "disparaging RDA [or] its employees," in direct contravention of the Waiver, his decision to deny her severance benefits was sound and far from arbitrary and capricious.

Kirk argues that Rich's alleged conflict of interest should have caused the District Court to review the denial of benefits *de novo*. Even in the instance of a possible or actual conflict of interest, the arbitrary and capricious standard endures. *Pagan*, 52 F.3d at 442. A plan administrator's conflict of interest only comes into play in our application of *Pagan's* standard. *See Zuckerbrod*, 78 F.3d at 49. As the Supreme Court explained in *Bruch*, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 489 U.S. at 115 (citation and quotation marks omitted). We later announced that "in cases where the plan administrator is shown to have a conflict of interest, the test for determining whether the administrator's interpretation of the plan is arbitrary and capricious" entails two inquiries: 1) "whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan"; and 2) "whether the evidence shows that the administrator was in fact influenced by such conflict." *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1255–56 (2d Cir.1996).

In *Pagan*, we rejected a conflict of interest argument where, similar to here, the plan administrators were company employees. There, NYNEX delegated complete discretion to administer its pension plan to the NYNEX Employees' Benefits Committee. 52 F.3d at 439, 441–42. The plaintiff in *Pagan* argued that arbitrary and capricious review was inappropriate because the Committee operated under a conflict of interest by "serv[ing] in dual roles, both as the Pension Plan's administrators and as NYNEX employees." *Id.* at 442. We rejected this argument and held that "the existence of such an alleged conflict does not operate to change the standard of review, but rather becomes 'a facto[r] in determining whether there is an abuse of discretion.'" *Id.* (quoting *Bruch*, 489 U.S. at 115). We therefore reviewed the "Committee's decision under the arbitrary and capricious standard, irrespective of whether the NYNEX Committee was operating under a possible or actual conflict of interest." *Id.*

Accordingly, even if Rich's dual positions as Vice President for Human Resources and Plan Administrator created a conflict of interest,[1] that conflict becomes a factor in our application of arbitrary and capri-

---

1. It is hardly clear that these dual roles created a conflict. "[T]he simple fact that the administrator of a plan ... happens to be 'an arm of the employer' does not in itself create a conflict of interest." *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1274 (2d Cir.1995).

cious review. In cases of a conflicted administrator, we determine whether the determination is arbitrary and capricious by looking at 1) whether the determination was reasonable and 2) whether evidence shows that the administrator was influenced by the conflict. *Sullivan*, 82 F.3d at 1255–56. As discussed earlier, Rich's determination was reasonable, as he conducted a thorough review and based his conclusions on sound findings of fact. Moreover, Kirk has failed to produce any evidence that Rich was influenced by the alleged conflict. *See Pagan*, 52 F.3d at 443 (noting that the plaintiff has "fail[ed] to explain how such an alleged conflict affected the reasonableness of the [Administrative] Committee's decision").

We also decline Kirk's invitation to revisit *Pagan*. We are bound by the decision of an earlier panel "unless it has been called into question by an intervening Supreme Court decision or by one of this Court sitting *in banc*." *United States v. Santiago*, 268 F.3d 151, 154 (2d Cir.2001); *accord In re Sokolowski*, 205 F.3d 532, 534–35 (2d Cir.2000) (per curiam). Neither the Supreme Court nor this Circuit *in banc* has called *Pagan* into question. We therefore are bound to follow *Pagan*.

We have reviewed all of the plaintiff-appellant's other arguments and affirm the judgment of the District Court.