**Sharon KLECHER, Plaintiff–Counter–Defendant–Appellant,**

v.

**METROPOLITAN LIFE INSURANCE CO. and Oxford Health Plans, Inc. Employee Welfare Plan, Defendant–Counter–Claimant–Appellee.**

No. 05–3598.

United States Court of Appeals, Second Circuit.

Feb. 16, 2006.

dressed in this summary order.

Aba Heiman, Fusco, Brandenstein & Rada, P.C., Woodbury, New York, for Appellant.

Carl J. Schaerf, Lester Schwab Katz & Dwyer, LLP (Allan M. Marcus, on the brief) New York, New York, for Appellees.

Present: Hon. DENNIS JACOBS, Hon. RICHARD C. WESLEY, and Hon. JOHN R. GIBSON,[1] Circuit Judges.

### SUMMARY ORDER

Sharon Klecher appeals from a grant of summary judgment in favor of appellees Metropolitan Life Insurance Co. ("MetLife") and Oxford Health Plans, Inc. Employee Welfare Plan ("the Plan"). Klecher argues that the decision of appellees to terminate her long term disability ("LTD") benefits was arbitrary and capricious and that the district court's decision to uphold the appellees' decision should be vacated. Familiarity by the parties is assumed as to the facts, the procedural context, and the specification of appellate issues.

Klecher had documented lower back problems dating from at least 1990, and an MRI administered in 1995 showed a mild narrowing of her spine and disc desiccation. In October 1998, Klecher took leave from her job as Director of Provider Operations for Oxford Health Plans, Inc. ("Oxford") because she experienced an exacerbation of her back problems due to her pregnancy. She began receiving short term disability benefits on October 20, 1998, and long term disability ("LTD") benefits on April 21, 1999.

Under the Plan, a claimant is entitled to LTD benefits for the first twenty-four months if she can prove that, "due to an injury or sickness," she is "unable to perform each of the material duties of [her] regular job." J.App. at 16. In considering Klecher's eligibility for LTD benefits, MetLife reviewed an extensive body of

---

1. The Honorable John R. Gibson of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

medical evidence, including numerous reports from Klecher's primary care provider and two magnetic resonance imaging ("MRI") reports. An MRI administered on May 19, 1999, revealed that Klecher suffered from degenerative disc disease and a central disc herniation but showed no evidence of spinal stenosis or foraminal encroachment. Various reports of Klecher's primary care provider, reflecting three visits between July 1 and September 9, 1998, indicated the presence of radiculopathy, a disease of the spinal nerve roots. Her physician reported that Klecher was severely restricted in terms of movement, that Klecher was suffering from pain and muscle spasms, and that recovery was possible in six months.

On September 28, 1999, MetLife hired an independent consultant, Dr. Amy Hopkins, to review Klecher's file. Dr. Hopkins concluded that the objective evidence of Klecher's physical impairment did not corroborate her subjective complaints, or the assessment of her doctor that she is unable to complete the physical tasks of her regular job. Around this time, MetLife also hired a surveillance company to conduct two days of surveillance outside of Klecher's home.[2]

By letter dated October 4, 1999, MetLife informed Klecher that, "although [she] may experience some discomfort there is no medical documentation or clinical data presented, which shows [her] condition to be severe enough that it would prevent [her] from performing the duties of [her] own occupation which is classified as sedentary to light." J.App. at 234. Based on that assessment, MetLife terminated Klecher's LTD benefits effective October 1, 1999. Neither Dr. Hopkins' report nor

the termination letter mentioned the surveillance report.

Klecher appealed the decision to MetLife's internal claims review department. In connection with that request, Klecher submitted more evidence to support her claim of disability, including examination reports by two neurologists. One report was based upon a nerve conduction velocity/electromyography ("NCV/EMG") test, which measures and records the electrical activity in muscles. This test apparently showed some radiculopathy, consistent with the earlier findings of a herniated disc in Klecher's lumbar spine.

On February 22, 2000, Dr. Hopkins issued a second report on Klecher's claim. In this report, Dr. Hopkins first noted that Klecher's radiculopathy had been present since 1995 without worsening. Thus, the NCV/EMG had little persuasive value for Dr. Hopkins because Klecher was previously able to perform the material duties of her job despite the same degree of radiculopathy. Dr. Hopkins also noted that the claims of disability proffered by Klecher and her doctors were not supported by, and often undermined by, certain pieces of objective evidence in the record. Because of this, Dr. Hopkins recommended that Klecher take a functional capacity exam ("FCE")—a battery of tests (often taking many hours) measuring a person's strength, dexterity, and coordination. Klecher's physician refused to authorize the FCE, indicating that the test "would be detrimental to her health." J.App. at 126.

On March 14, 2000, MetLife sent Klecher a five-page letter affirming its decision to terminate her LTD benefits. The letter first noted that Klecher's employment is

**2.** The surveillance video, taken on two separate days for ten hours each day, contained roughly five minutes of relevant material. In particular, the video contained brief clips of Klecher walking around her yard and carrying her infant daughter with apparent ease.

sedentary in nature.[3] MetLife then indicated that the objective evidence submitted by Klecher, including the new medical evidence, still did not show a physical inability to perform the tasks of her occupation.

Klecher appealed the decision a second time on November 6, 2000, again submitting new medical evidence, including a report of an orthopedist and yet another report of her primary care physician. Dr. Hopkins reviewed this evidence and again recommended termination of benefits. Dr. Hopkins concluded that the new evidence did not change her view that there was not sufficient objective evidence to support the claims of disability. Dr. Hopkins also noted that the surveillance conducted in late 1999 indicated a level of functioning exceeding that claimed by Klecher. MetLife informed Klecher of this decision by letter dated November 15, 2000, and concluded by saying that the decision represented its final eligibility determination.

Klecher filed suit in the United States District Court for the Southern District of New York under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, which allows an employee to challenge in federal court an insurance plan administrator's determination of eligibility for LTD benefits. *See id.* § 1132(a)(1)(B).

ERISA does not set out the applicable standard for challenging eligibility determinations. Courts have concluded that where, as here, an insurance plan gives the administrator broad discretion to determine eligibility for LTD benefits, a court may reverse a determination only if it is arbitrary or capricious. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Zuckerbrod v. Phoenix Mut. Life Ins. Co.,* 78 F.3d 46, 49 (2d Cir.1996). "Thus, the district court was required to consider whether '[the defendant's] decision was based on a consideration of relevant factors and whether there has been clear error of judgment.'" *Id.* (quoting *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995)).

This Court may only set aside the district court's factual findings if they are clearly erroneous; however, we review *de novo* the district court's decision as to whether the administrator's decision was arbitrary or capricious. *See Zuckerbrod,* 78 F.3d at 49. The effect of this is that we essentially reapply the arbitrary and capricious standard to the administrator's determination. Thus, "we may overturn a decision to deny benefits only if it was 'without reason, unsupported by substan-

---

**3.** Klecher argues on appeal to this Court that the classification of her employment as "sedentary" under the standards set forth in the Department of Labor's *Dictionary of Occupational Titles* (4th edition) (*"DOT"*) was arbitrary and capricious. We disagree. Even if the job strength requirements might have been more reasonably characterized as "light" under *DOT* standards, a mere mistake in classification is not a basis for overturning the decision. We are concerned with whether or not the claim reviewer considered the actual job requirements. In this case, it is clear from the record that MetLife considered Klecher's own description of her job duties in assessing disability. Furthermore, a job description in DOT entitled "Hospital—Insurance Representative," which bears a remarkable resemblance to Klecher's own description, has a "sedentary" strength classification. *See* Dep't of Labor, *DOT* 166.267–014. Notably, this description says, "May involve travel from city to city." *Id.* This undercuts Klecher's contention that, in employing a "sedentary" classification, MetLife necessarily ignores the most strenuous aspect of her job, i.e., travel to various hospitals around the New York City metropolitan area. In any event, we are likewise not bound by *DOT*'s boilerplate job descriptions; rather, we focus on the occupational requirements that have been considered by MetLife's claim manager.

tial evidence or erroneous as a matter of law.'" *O'Shea v. First Manhattan Corp.*, 55 F.3d 109, 112 (2d Cir.1995) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995). "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Pension Fund*, 698 F.2d 593, 601 (2d Cir.1983).

The district court granted summary judgment in favor of the appellees, holding that "nothing in the record ... suggest[s] that MetLife's twice reviewed decision ... was arbitrary and capricious." *Klecher v. Met. Life. Ins. Co.*, No. 01–CV–9566, 2005 WL 1337509, at \*10 (S.D.N.Y. June 6, 2005). To support this conclusion, the district court noted Dr. Hopkins' attempts to highlight the deficiencies in the record and to indicate which pieces of objective evidence formed the basis of her recommendation. Finally, the district court held that Dr. Hopkins' conclusions were supportable even under the job strength classification urged by Klecher.

Klecher essentially raises two challenges on appeal. First, she challenges the job strength classification that MetLife purported to rely upon in making the final eligibility determination. However, while the physical capacity requirements of a claimant's job are undoubtedly central to a determination of eligibility for LTD benefits, there is substantial evidence in the record before us showing that Dr. Hopkins took into account Klecher's own description of her job duties in determining whether Klecher's level of impairment rose to the level of being a disability.

Second, Klecher challenges MetLife's selective reliance on the medical evidence in making the eligibility determination. While it would be troubling if MetLife had failed to address clear medical evidence of impairment, that is not the case in this appeal. Dr. Hopkins' reports address all of the relevant objective medical evidence submitted by Klecher. In reviewing the administrative record, we find that MetLife's decision was supported by substantial evidence, and thus that determination must stand.

For the foregoing reasons, the judgment of the district court in favor of appellees is **AFFIRMED.**