**Kathleen ZISEL and Robert Zisel, Plaintiffs,**

**v.**

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Defendants.**

No. CV 93–4222.

United States District Court, E.D. New York.

March 9, 1994.

Anderson, Kill, Olick & Oshinsky, P.C. by Laura V. Jones, New York City, for plaintiffs.

Shanley & Fisher, P.C. by Charles A. Reid, III, New York City, for defendants.

WEXLER, District Judge.

Robert Zisel is a member of the Health Care Alliance Plan (the "Plan"), a self-funded employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Kathleen Zisel, Robert Zisel's wife, is a covered person under the Plan. She was diagnosed with Lyme disease and was prescribed a regimen of intravenous antibiotic drugs. On November 23, 1993, the Plan Administrator (the "Administrator") rendered a final decision denying coverage for this treatment, finding that it was not medically necessary. The Zisel's are seeking to enjoin defendants from refusing to pay for this treatment. De-

fendants seek an order *in limine* declaring that this Court will review the Administrator's decision using the arbitrary and capricious standard of review and that when making the determination, the only evidence that will be considered is evidence that was presented to the Administrator. For the reasons stated below, this Court will review the Administrator's decision using the arbitrary and capricious standard of review. However, in addition to the evidence submitted to the Administrator, the Court will consider helpful expert medical testimony and evidence going to the Administrator's bad faith.[1]

I. *Scope of Review*

In *Firestone Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established rules regarding the level of deference to be accorded an ERISA plan administrator's or fiduciary's benefit determination. The Court held that

a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.*

*Id.* at 115, 109 S.Ct. at 956–57. (emphasis added). Thus, if the relevant plan documents confer discretionary authority upon the administrator, the arbitrary and capricious standard of review is to be applied. *Id.* The *Firestone* Court did not spell out what language is necessary to find that an administrator is invested with discretionary authority. The lower courts, however, have filled in the void and there is a consensus that "no magic words" are required to trigger one or the other levels of review. *See DeNobel v. Vitro Corp.,* 885 F.2d 1180 (4th Cir.1989). Rather, when making this determination, courts must examine the relevant plan documents to determine whether the administrator is given the power to construe doubtful terms or to resolve disputes over benefit eligibility.

---

1. On December 11, 1993, this Court held a conference and informed the parties of its ruling. This decision does not in any way alter that ruling. To the contrary, the Court issues this written decision only to clarify its earlier ruling and to explain more fully how the Court arrived at its decision.

■ Here, the Administrator's responsibilities and authority are set forth in the Summary Plan Description ("SPD"). That document states

The Plan Administrator has the authority to determine all questions arising under the provisions of the Plan, including the power to determine the rights and eligibility of participants or any other persons, and to remedy ambiguities, inconsistencies, or omissions....

In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

This language makes it absolutely clear that the Administrator has broad discretion to determine eligibility issues, and therefore any eligibility decision can only be set aside if there has been an abuse of discretion.[2]

■ Plaintiffs contend that although the Administrator may have discretionary authority when making other decisions, he does not retain that authority when determining whether a particular treatment is "medically necessary." Plaintiffs argue that the term "medically necessary" is defined in the Plan, and therefore the Administrator has no discretion in determining whether a situation falls within the meaning of that defined term. The Plan defines "medically necessary" as follows:

"Medically Necessary" means that a service, confinement or supply must be:

—Prescribed by a Physician for the diagnosis or treatment of a Sickness or Injury, and

—Considered to be generally accepted and in use by the medical community as appropriate for the condition being treated or diagnosed.

The Plan further states:

[t]he fact that a Physician prescribes a service, confinement or supply for a covered person does not alone mean that such service, confinement or supply will be considered Medically Necessary, or that it is included as a covered medical expense under the Plan.

*The Plan Administrator will decide whether the service, confinement or supply is generally accepted and in use by the medical community as appropriate for the condition being treated or diagnosed.* (emphasis added).

Plaintiffs' argument that the Administrator has no discretion when determining whether treatments are medically necessary is contrary to the plain language of the Plan. Not only does the SPD give the Administrator broad discretion overall, but the Administrator is also given the power to decide when a treatment is accepted and in use in the medical community. It is obvious that the term "medically necessary" requires interpretation beyond the definition set forth in the Plan. The Plan does not and could not spell out every treatment that is medically necessary for every illness. Because such detailed determination is designated to the Plan Administrator it can only be set aside if the Administrator acted in an arbitrary and capricious fashion when making his determination.[3]

II. *Is this Court Limited to the Evidence Presented to the Administrator When Determining Whether there was an Abuse of Discretion?*

■ Defendants argue that this Court should only look to the evidence that was before the Administrator when determining whether the Administrator's decision was ar-

---

**2.** This Court uses the terms "arbitrary and capricious" and "abuse of discretion" interchangeably.

**3.** It is undisputed that the Plan at issue here is self-funded by Sears and that the Administrator is a Sears executive. Consequently, it is clear

that the Administrator is operating under a conflict of interest. Thus, when deciding whether the Administrator acted arbitrarily and capriciously, this Court will take into account this conflict. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 956.

bitrary and capricious. Plaintiffs, on the other hand, want to offer expert medical testimony, to assist the Court in understanding the medical issues involved in this case, as well as evidence that tends to show that the Administrator acted in bad faith when denying Mrs. Zisel's claim. Neither the Supreme Court nor the Second Circuit has spoken on this issue. For the following reasons, this Court will consider both expert medical testimony and evidence of bad faith.

In *Masella v. Blue Cross & Blue Shield*, 936 F.2d 98, 104 (2d Cir.1981), an ERISA plan administrator, who had no discretion, denied benefits to the plaintiff. Accordingly, when the plaintiff challenged the decision, the district court reviewed the denial *de novo*. When reviewing the administrator's decision, the district court considered expert medical evidence regarding the particular treatment at issue, evidence that was not before the administrator at the time of his decision.

On appeal, the Second Circuit was called upon to decide whether this additional testimony was properly considered, inasmuch as there was a conflict in other circuits with respect to the scope of evidence permitted to be considered on *de novo* review. The *Masella* court concluded that even if it were to hold that courts exercising *de novo* review are limited to considering only evidence that was before a plan administrator, it would, in any event, distinguish between evidence intended to establish a particular historical fact and expert evidence regarding the proper interpretation of the terms of the plan. Consequently, the *Masella* court did not decide the scope of *de novo* review.

Following the *Masella* court, this Court will consider expert medical evidence not presented to the Administrator that is intended to show that the intravenous antibiotic treatment is medically necessary within the meaning of the Plan. Thus, like the *Masella* court, this Court finds it unnecessary to decide whether courts are limited to

evidence presented to a plan administrator when reviewing discretionary benefits decisions.

Moreover, in one of the more comprehensive decisions in this area, the fifth circuit, citing the *Masella* decision with approval, held that district courts are not limited to the administrative record when reviewing a decision under the abuse of discretion standard. *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 639 (5th Cir.1992). *But see Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 48 n. 8 (3rd Cir.1993); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991) (when reviewing a plan administrator's decision under the arbitrary and capricious standard, only evidence presented to administrator may be considered).[4] Like the *Masella* court, the *Wildbur* court did not allow the district court to consider evidence of historical fact not presented to the administrator. The *Wildbur* court did, however, allow the district court to hear evidence going to the administrator's bad faith and helpful expert testimony.

Because the Plan at issue is self-funded by Sears and the Administrator is a Sear's employee, there can be no doubt that the Administrator is operating under an inherent conflict of interest. Accordingly, this Court will consider evidence tending to show that the Administrator acted in bad faith when denying medical benefits to Kathleen Zisel. *See Firestone Tire and Rubber Co.*, 489 U.S. at 115–16, 109 S.Ct. at 956 ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.").

## III. *CONCLUSION*

For the above-stated reasons, this Court will review the Administrator's decision using the arbitrary and capricious standard of review. Moreover, this Court will consider

---

4. Because of the types of evidence involved in these cases, these courts did not have the opportunity to distinguish between evidence of historical fact and the types of evidence at issue here. For example, in *Abnathya*, 2 F.3d at 48 n. 3, the district court was instructed not to consider med-

ical reports indicating that the plaintiff was disabled because the plaintiff did not submit these reports to the administrator before he made his decision. Thus, *Abnathya*, did not preclude the district court from considering the types of evidence at issue in this case.

both expert medical testimony not presented to the Administrator and evidence that tends to show that the Administrator acted in bad faith when he denied Kathleen Zisel her medical benefits. This Court will not, however, consider any evidence of historical fact, that was not presented to the Administrator in the first instance.

SO ORDERED.