48

**Seymour ZUCKERBROD, Plaintiff,**

v.

**PHOENIX MUTUAL INSURANCE COMPANY, Defendant.**

No. CV 92–4709.

United States District Court,
E.D. New York.

April 5, 1995.

Zuckerbrod & Taubenfeld by Martin Zuckerbrod, Cedarhurst, NY, for plaintiff.

Townley & Updike by Stephanie J. Lannigan, New York City, for defendant.

*FINDINGS OF FACT*

WEXLER, District Judge.

1. Plaintiff Seymour Zuckerbrod is insured pursuant to an insurance policy issued by defendant Phoenix Mutual Life Insurance Company ("Phoenix") and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

2. Under the terms of the policy, plaintiff is entitled to receive 80 percent of covered expenses for private duty nursing care up to a maximum of $20,000, if Phoenix determines such nursing care is "essential, in our judgment, for the treatment a Covered Person's Injury or Sickness."

3. Plaintiff was hospitalized at New York University Medical Center from February 1990 to April 1990 where he received, at the request of his treating doctors, private duty nursing care from March 2, 1990 through and including April 13, 1990, at a total cost of approximately $27,000.

4. Plaintiff filed claims to Phoenix for reimbursement of his private duty nursing expenses up to the $20,000 policy limit.

5. The record indicates that by letter dated June 29, 1990, Phoenix notified plaintiff that it was denying reimbursement for the period April 1 through April 13, 1990, because the care was "custodial in nature" and not "essential treatment." There is no evidence in the record of a decision at that time on the claim for private duty nursing from March 1 through March 31, 1990, although there are copies of letters from Phoenix to plaintiff in April and May 1990 requesting plaintiff to submit copies of the private duty nurses' treating notes and a letter from his doctor stating the medical necessity of the private duty nursing care during the period at issue.

6. On July 2, 1990, a Phoenix claims analyst, Mary Ann Linton ("Linton"), referred plaintiff's file for evaluation to Linda Myco ("Myco"), a nurse-consultant employed by Phoenix, requesting that Myco review the file and advise if private duty nurses were medi-

cally necessary for plaintiff's treatment. Myco responded that she needed more information to properly review the claim, such as plaintiff's hospital admission and discharge summaries and a doctor's letter of medical necessity.

7. On July 12, 1990, Linton again forwarded plaintiff's file to Myco for review, enclosing the private duty nurses' notes, which described the nursing care they provided to plaintiff, and a letter of medical necessity, dated June 4, 1990, from Dr. Glenn W. Jelks, one of plaintiff's doctors, to Phoenix. On July 13, 1990, Myco advised that "[b]ecause [plaintiff's nursing] care was extensive during a portion of the day, I would consider 1 shift per day" from March 3 through March 8, March 12 through March 28, and April 1 through April 4 medically necessary for plaintiff's treatment.

8. Shortly thereafter, Phoenix received another letter of medical necessity from another of plaintiff's doctors, Dr. Arthur C. Fox of NYU Medical Center, this one dated July 18, 1990. Linton testified that she did not know if the July 18, 1990 letter was ever submitted to Myco for her review.

9. Based on Myco's recommendation, Linton determined that Phoenix should reimburse plaintiff for only one eight-hour shift per day on the dates recommended by Myco, and for reimbursement purposes she designated the day shift as the shift for reimbursement. By letter dated July 31, 1990, Phoenix advised plaintiff that "we are unable to provide all the benefits for the private duty nursing care. However, the nursing care was extensive during part of the day and we have considered one shift per day as necessary care for you."

10. On August 3, 1990, Phoenix had plaintiff's file reviewed by an independent surgical-consultant, Dr. Paul Flandreau ("Flandreau"). Flandreau responded as follows: "I believe that the care provided by an adequately staffed med. surg. nursing floor would be able to cover this gentleman's treatment. The need for PDN's [private duty nurses] is the physician's choice based on his assessment of staffing adequacy." There was no evidence that staffing was inadequate at the hospital on the dates at issue.

11. Ultimately, Phoenix reimbursed plaintiff for one eight-hour shift per day on the dates recommended by Myco (*i.e.,* March 3 through March 8, March 12 through March 28, and April 1 through April 4), and denied coverage for the other two shifts on those dates and for all other days at issue. The total cost of the private duty nurses for one shift per day on the dates recommended by Myco totalled $6,075.00. Phoenix paid plaintiff 80% of that amount, for a total of $4,860.00. Thereafter, plaintiff commenced this action to recover the unpaid expenses up to the $20,000 policy limit.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1132(e)(1) of ERISA.

2. Where an insurance policy governed by ERISA grants discretionary authority to a plan administrator or fiduciary to determine eligibility for benefits or to construe the terms of a plan, review of a claim for denial of benefits is subject to an arbitrary and capricious standard of review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Zisel v. Prudential Ins. Co. of Amer.,* 845 F.Supp. 949, 950 (E.D.N.Y. 1994). However, where an insurer administers its own policy and pays benefits out of its own funds, it operates under a conflict of interest. This inherent conflict of interest is taken into account in determining whether the insurer's benefits determination was arbitrary and capricious or, in other words, an abuse of discretion. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57; *Zisel v. Prudential Ins. Co. of America,* 845 F.Supp. at 951 n. 3.; *cf. Brown v. Blue Cross & Blue Shield of Ala., Inc.,* 898 F.2d 1556, 1563–68 (11th Cir.1990) (applying arbitrary and capricious standard to benefits determination by insurance company administering its own policy, but shifting burden to insurer to prove discretion was not tainted by self-interest), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

3. The policy at issue provides that a "Covered Expense … must be essential, in our judgment, for the treatment of a Covered Person's Injury or Sickness." This language gives Phoenix discretion in making benefits determinations. Although the record does not indicate whether Phoenix pays benefits out of its own assets, for purposes of this decision the Court assumes that it does. Assuming Phoenix serves as the decisionmaker for benefits that are to be paid out of its own assets, it operates under a conflict of interest. Under these circumstances, Phoenix's partial denial of benefits will be set aside only if that decision was arbitrary and capricious, considered in light of the conflict under which Phoenix operates. *See Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57; *Zisel*, 845 F.Supp. at 950, 951 n. 3.

4. Phoenix's independent surgical-consultant, Flandreau, opined that private duty nursing was not medically necessary for plaintiff's treatment. This determination would have supported a complete denial of plaintiff's claim, and there is no evidence in the record suggesting that Flandreau's independence should be questioned. These facts demonstrate that Phoenix's decision was not tainted by its conflict of interest. Phoenix's adherence to its previous determination to pay one shift per day, despite Flandreau's recommendation, is not an abuse of discretion. Based upon the record presented, plaintiff failed to demonstrate that Phoenix's decision partially denying benefits, considered in light of the conflict under which Phoenix operates, was arbitrary and capricious.

5. Accordingly, the Clerk of the Court is directed to enter judgment for defendant Phoenix dismissing the complaint, and to close the file in this case.

SO ORDERED.