**Debra BARNABLE, Plaintiff,**

v.

**FIRST FORTIS LIFE INSURANCE COMPANY, Defendant.**

No. 97–CV–676 (JS).

United States District Court,
E.D. New York.

March 26, 1999.

Steven Jay Harfenist, Friedman & Harfenist, Bayside, NY, for plaintiff.

Jean L. Schmidt, Roberts & Finger, LLP, New York City, for defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Pending before the Court is Defendant First Fortis Life Insurance Company's (hereinafter "Defendant" or "Fortis") motion for summary judgment in this action brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that Defendant improperly denied Plaintiff long term disability benefits pursuant to the long term disability plan (hereinafter the "Plan").

## BACKGROUND

Debra Barnable, (hereinafter "Plaintiff" or "Barnable"), graduated from the University of Maryland in 1985 with a degree in therapeutic recreation. As part of her education, Plaintiff completed courses in psychology, sociology, abnormal psychology and parks and recreation. On October 8, 1985, Barnable accepted a position with the Suffolk Child Development Center ("SCDC"), as a recreational therapist. (Barnable Aff. ¶ 2.)

In connection with her employment, Barnable received Long Term Disability ("LTD") Benefits through First Fortis Life Insurance Company's group policy. (Def.'s Rule 56.1 Statement (hereinafter "56.1") ¶ 4.) Under the Plan, during the first 36 months of an alleged disability, an eligible person is deemed disabled if he or she is "under the regular care of a Licensed Physician (other than him or herself) and is unable to perform the material duties of his or her occupation or employment." (Def.'s 56.1 ¶ 6.)

Also pursuant to the Plan, after the first 36 months, the employee will continue to

receive LTD benefits if he/she is "unable to perform the material duties of any and every gainful occupation or employment for which the person is or becomes reasonably fitted by education, training or experience." (Def.'s 56.1 ¶ 21.)

Plaintiff asserts that the Plan does not expressly indicate that Fortis has the final authority or discretion in interpreting and/or administering the Plan. Fortis, however, relies on three sentences within the Plan to illustrate that it does in fact have ultimate discretion. Fortis first points to one sentence within the Claims Provisions, which reads:

> If necessary to determine Our liability, as part of proof of loss We may require . . . the claimant to authorize release of medical data. . . If any information is not furnished or the release of data is not authorized, We reserve the right to withhold benefits.

(Def.'s Attachment to Reilly Affidavit, (hereinafter "Vol. I"), Ex. C.) Fortis also looks to a sentence in the General Definitions Section which defines "satisfactory evidence of insurability" as "evidence . . . on the person's health [which] must be acceptable to Us." (Def.'s Vol. I, Ex. C.) Lastly, Fortis highlights a sentence in the "Adjustment of Benefits" section which allows Fortis to adjust benefit amounts if "[W]e find that the amount of benefits or payments from other sources . . . [are] greater or less than what was actually considered." (Def.'s Vol. I, Ex. C.)

On April 27, 1989, Plaintiff injured her back when a SCDC client jumped on her. (Barnable Aff. ¶ 3.) As a result of the injury, Barnable began to receive treatment from a chiropractor, Bruce Silber, D.C. (hereinafter "Dr. Silber"). Plaintiff was diagnosed as suffering from lumbar intervertebral disc syndrome and sciatica. Dr. Silber opined that Barnable was totally disabled from her job and incapable of lifting, bending and excessive sitting. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Pl.'s Mem.") at 3.) However, by December 1989, Dr. Silber

also also reported that Barnable's condition was improving, that she was able to perform part time work. (Def.'s Vol. I, Ex. E.)

In January 1990, Plaintiff filed a claim for LTD benefits under the Plan. (Def.'s 56.1 ¶ 13.) Plaintiff began receiving LTD benefits in July 1990, and continued to receive benefits for approximately three years. (Barnable Aff. ¶ 4.) In February 1993, Plaintiff was advised that Fortis was evaluating whether she would still be eligible for LTD benefits beyond 36 months under the Plan's second definition of disability. (Def.'s 56.1 ¶ 22.)

In connection with its review in August 1993, Fortis had Plaintiff examined by Zolly Silberman, M.D. (hereinafter "Dr. Silberman"). Dr. Silberman concluded that Plaintiff was not disabled and that "she may return to her regular occupation as prior to this accident." (Defendant's Attachments to 56.1 Statement (hereinafter "Vol. II"), Ex. M.) Additionally, by letter dated September 10, 1993, Fortis asked Dr. Silber, Plaintiff's chiropractor, if Plaintiff was "disabled for every and any gainful occupation," and whether he agreed with Dr. Silberman's conclusions that Plaintiff did not have any disability related to her injury of April 29, 1989, and that she is capable of returning to work without restriction. (Def.'s Vol. II, Ex. N.) Dr. Silber responded in the negative to both inquiries, in effect agreeing that Plaintiff was not disabled for every and any gainful occupation, while disagreeing with Dr. Silberman's conclusions that Plaintiff has no disability and could return to work without restriction. (Def.'s Vol. II, Ex. O .)

Fortis also retained General Rehabilitation Services, Inc. (hereinafter "Rehabilitation Services"), to find out whether there were any employment positions available commensurate with Plaintiff's education, training and experience. Rehabilitation Services issued a report on October 28, 1993, (hereinafter the "Report"), which identified three occupations—Recreational Therapist, Occupational Therapist Aide and Psychiatric Aide—within Plain-

tiff's "physical limitations," defined as "light to medium duty." (Pl.'s Ex. G.) The Report stated that these occupations were consistent with Plaintiff's "indicated work activities, interests, aptitudes, skills and work situations [and] . . . reasonably commensurate with [Plaintiff's] prior levels of vocational attainment." (Pl.'s Ex. G.) The Report also established that there were multiple employers in Plaintiff's geographic area that hired persons with these job titles. (Pl.'s Ex. G.) However, at the time the Report was conducted, only one of the identified employers had a current job opening. Nevertheless, the Report concluded that the Plaintiff was employable in her area with a salary compatible with her earnings at the time of her injury. (Pl.'s Ex. G.)

By letter dated January 12, 1994, Fortis advised Plaintiff that she was no longer eligible for LTD benefits because she was not disabled from "any and every gainful occupation." (Def.'s 56.1 ¶ 28.) Fortis stated that its conclusion was based upon Barnable's medical records, Dr. Silber's reports, Dr. Silberman's reports and the Rehabilitation Services report. (Pl.'s Ex. H.) Furthermore, Barnable was advised of the appeal procedure and to submit additional objective evidence of total disability if she wished to appeal Fortis' determination. (Pl.'s Exs. H & I.)

In March 1994, Plaintiff, through her attorneys, appealed Fortis' decision to deny her LTD benefits. (Def.'s Vol. I, Ex. Q.) However, Fortis declined to consider Plaintiff's appeal because "no new evidence of total disability [was] submitted for their review," and therefore, Plaintiff's claim remained denied. (Def.'s Vol. I, Ex. R.) Plaintiff commenced this lawsuit approximately two and one-half years later, on January 10, 1997.

## DISCUSSION

### I. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under the law of the Second Circuit, a district court must weigh several considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim. *Gallo v. Prudential Residential Servs., Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994) (citations omitted). *Gallo* articulated the following considerations: (1) the moving party carries the burden to demonstrate that no genuine issue respecting any material fact exists; (2) all ambiguities and inferences must be resolved in favor of the non-moving party; (3) the moving party may obtain summary judgment by showing that no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight; and (4) the trial court's duty is confined to issue-finding and does not extend to issue-resolution. *Id.; see also B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir.1996).

In addition, a court must be mindful of whether the purported factual dispute is material because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Yet, if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is inapposite. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). It is within this framework that the Court addresses the grounds for Defendant's motion for summary judgment.

### II. ERISA PREEMPTION

■ Initially, Defendant moves for summary judgment on the grounds that Plain-

tiff's sole cause of action, alleging breach of contract, is preempted because the Plan is an employee benefit plan within the meaning of ERISA. *See* 29 U.S.C. § 1144 et seq. Plaintiff concedes this point in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

■ It is well-established that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "State laws" encompass "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," 29 U.S.C. § 1144(c)(1), and include not only statutory provisions but common law claims as well. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *see also Fortune v. Medical Assoc. of Woodhull, P.C.,* 803 F.Supp. 636, 640 (E.D.N.Y.1992). Thus, it is incontrovertible that where a state law relates to an employee benefit plan, it is preempted by ERISA.

■ The term "employee benefit plan" is defined in ERISA as "an employee welfare benefit plan or an employee pension plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan includes any plan, fund, or program … established or maintained by an employer … for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, … benefits in the event of sickness [or] disability…" 29 U.S.C. § 1002(1). An ERISA plan is established when "from the surrounding circumstances a reasonable person can ascertain (1) the intended benefits, (2) a class of beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits." *Grimo v. Blue Cross/Blue Shield of Vermont,* 34 F.3d 148, 151 (2d Cir.1994).

It is clear that the Plan at issue here is an "employee benefit plan" within the meaning of ERISA. The benefits at issue are long term disability benefits and Plaintiff was an employee covered by the plan.

Fortis is the source of financing and the procedures for receiving benefits are contained in the Plan. Further, the Plan does not fall into ERISA's safe harbor provision of 29 C.F.R. § 2510.3–1(j). *See Grimo,* 34 F.3d at 152.

■ Finally, the law at issue "relates to" an ERISA covered employee benefit plan, because, Section 502(a)(1)(B) of ERISA authorizes a claimant to commence suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). State common law breach of contract claims for denial of benefits pursuant to an employee benefit plan are preempted because ERISA provides the exclusive remedy. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 288 (2d Cir.1992); *Morlino v. Staten Island Univ. Hosp.,* No. 95 Civ. 3891, 1998 WL 160937, at *9 (E.D.N.Y. April 1, 1998) (finding plaintiff's breach of contract claim preempted by ERISA).

As Plaintiff's sole cause of action is preempted by ERISA, sufficient grounds exist to grant Defendant's motion for summary judgment. However, because the Court would be inclined to allow Plaintiff to replead a denial of benefits claim pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA, and because Defendant removed this matter to federal court pursuant to ERISA, and as both parties have presented their respective arguments as if such claim was indeed advanced, the Court will address the substantive merits of the denial of benefits claim.

## III. STANDARD OF REVIEW

■ The Supreme Court has held that "a denial of benefits challenged under [29 U.S.C. § 1132(a)(1)(B)] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire*

*and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Where the plan confers discretionary authority on the administrator, the highly deferential "arbitrary and capricious" standard of review is utilized. *See Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995). The Supreme Court has counseled that ERISA's purpose was "to promote the interests of employees and their beneficiaries" and "to protect contractually defined benefits." *Firestone,* 489 U.S. at 113, 109 S.Ct. at 955. Therefore, "[t]he trustee or administrator [should] bear[ ] the burden of proving that the 'arbitrary and capricious' standard should apply in a given case." *Kinstler v. First Reliance Standard Life Ins. Co.,* No. 96 Civ. 921, 1997 WL 401813, at *4 (S.D.N.Y. July 16, 1997); *see also Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 230 (2d Cir.1995). "[A]ny ambiguities must be construed against the administrator and in favor of the party seeking judicial review." *Arthurs v. Metropolitan Life Ins. Co.,* 760 F.Supp. 1095, 1098 (S.D.N.Y.1991).

■ Discretion is not found "merely because the administrator has the power to deny a claim." *MacMillan v. Provident Mutual Life Ins. Co. of Philadelphia,* 32 F.Supp.2d 600, 609 (W.D.N.Y.1999) (citing *Lund v. Unum Life Ins. of America,* 19 F.Supp.2d 1254, 1258 (D.Utah 1998)). Rather, courts have considered whether the plan uses "categorical or conditional language." *Id.,* 1999 WL 11571, at *4.

■ In deciding what standard of review to apply, the Court's initial focus must be on the words of the plan itself. *See Zisel v. Prudential Ins. Co. of America Inc.,* 845 F.Supp. 949, 950 (E.D.N.Y.1994). "While magic words such as 'discretion' and 'deference' may not be 'absolutely necessary' to avoid a stricter standard of review, their presence ... is certainly helpful in deciding the case." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d. Cir.1995) (citation omit-

ted) (and cases cited therein); *see also Orgeron v. Moran Towing Corp.,* No. 94 Civ 7483, 1995 WL 708688, at *4 (S.D.N.Y. Nov.30, 1995) (finding First Fortis policy subject to de novo interpretation) (and cases cited therein).

■ What is necessary is an expression of a clear intent to vest the administrator with discretionary authority. *See Brown v. Seitz Foods, Inc. Disability Benefit Plan,* 140 F.3d 1198, 1200 (8th Cir.1998) ("The proper way to secure deferential court review of an ERISA plan administrator's claims decisions is through express discretion-granting language.") (citations omitted); *see also Scalamandre v. Oxford Health Ins. Plans (N.Y.), Inc.,* 823 F.Supp. 1050, 1058–60 (E.D.N.Y.1993) (finding lack of "explicit discretion to construe the insurance contract" requires de novo review).

In the instant action, Fortis relies on three statements within the Plan to illustrate that the Plan clearly provides the administrator discretion in determining eligibility for disability benefits. Considering the statements one at a time, the first statement is:

> "If necessary to determine Our liability, as part of proof of loss We may require ... itemized bills stating the extent of loss ... certification of benefits and payments from other sources which may affect liability and ... We may request the claimant to authorize release of medical data ... If any information is not furnished or the release of data is not authorized, We reserve the right to withhold benefits";

(Def.'s Vol. I, Ex. C.—Fortis Plan at 384.) This statement merely goes to the claimant's obligation to provide the necessary financial and medical records to support the claim, and does not empower the administrator with explicit discretion in deciding the claim.

For example, in *MacMillan,* the court found that the plan language, "[the administrator] will pay benefits upon receiving

'proof' of the claimant's continuing disability and regular attendance of a physician" ... and that the administrator "at its own expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of a claim, examined by a physician or vocational expert of its choice," did not express a clear grant of discretionary authority, but was rather very basic language one would expect to find in any insurance policy. 1999 WL 11571, at *9. Further, the Second Circuit recently declared, albeit dicta, that language providing that " '[Metlife] will make the decision as to whether ... [s]uch [surgical, medical, or dental] service or confinement is qualified for benefits under This Plan' .... does not approach the 'typical plan provisions' on the basis of which appellate courts have exercised review under the more deferential arbitrary and capricious standard." *I.V. Services of America, Inc. v. Trustees of the American Consulting Eng'rs Council Ins. Trust Fund,* 136 F.3d 114, 121 n. 9 (2d Cir.1998); *see also Janas v. Continental Cas. Co.,* No. 96 CV 1901, 1999 WL 31006, at *2 (N.D.N.Y. Jan.15, 1999) (finding language "[w]ritten proof of loss must be furnished to U.S. within 90 days after the end of a period for which We are liable.... At our expense, We have the right to have a physician examine the Insured Employee as often as reasonably necessary while the claim is pending," insufficient to grant administrator discretionary authority to determine eligibility).

The second statement Fortis earmarks originates in "The General Definitions Section" which defines "satisfactory evidence of insurability" as "evidence ... on the person's health [which] must be acceptable to Us." (Def.'s Vol. I, Ex. C.—Fortis Plan at 366.) This statement refers to a potential insured's eligibility for disability insurance, as opposed to his or her entitlement to benefits once a claim is proffered. There is no dispute that Plaintiff's insurance was in effect pursuant to the Plan at all relevant times. *See, e.g., Dzinglski v. Weirton Steel Corp.,* 875 F.2d 1075, 1079

(4th Cir.1989) (authority to determine whether employee met eligibility standards under pension benefits plan does not constitute discretionary authority to grant or deny benefits).

The third statement comes from the "Adjustment of Benefits" section which allows Fortis to adjust benefit amounts if "[w]e find that the amount of benefits or payments from other sources ... [are] greater or less than what was actually considered." (Def.'s Vol. I, Ex. C.—Fortis Plan at 379.) This statement concerns the amount of benefit to be paid and any potential reduction due to receipt of benefits from collateral sources.

The Court concludes that Defendant's use of these statements in the Plan language does not satisfy Fortis' burden of proving that a more deferential standard of review should be used in this case. We decline to follow Judge Martin's opinion in *Bennett v. Fortis Benefits Ins. Co.,* 97 Civ. 346, 1998 WL 213199, at * 1 (S.D.N.Y. April 30, 1998) because the sole support for not applying a de novo standard in that case was the plan's phrase "to decide our liability." This phrase, much like its use in the plan in the present case, is modified by a requirement to generally provide proof of loss, including itemized bills, certification of benefits received from other sources and the release of medical data from these sources. Such language does not confer discretionary authority on the administrator in connection with the determination of disability, *vel non.* It merely speaks to the claimant's obligation to support the claim by providing all itemized bills and medical data.

Defendant cites cases such as *Zuckerbrod v. Phoenix Mutual Life Ins., Co.,* 78 F.3d 46 (2d Cir.1996) and *Glavan v. Building Serv. 32B–J Health Fund,* No. 96 Civ. 4145, 1997 WL 381789 (S.D.N.Y. July 10, 1997) as support that the above phrases bestow discretion and therefore, an "arbitrary and capricious" standard should be

used. However, each of these cases is readily distinguished from the case at bar.

In *Zuckerbrod*, the court applied the "arbitrary and capricious" standard of review because the plan stated nursing care benefits would be provided "if the defendant determined that such nursing care was essential in our judgment." 78 F.3d at 48. This statement clearly establishes that the decision to provide nursing care would be made by the defendant in the exercise of its judgment.

In *Glavan*, the court found discretion where the plan stated "the Trustees shall determine total and permanent disability." 1997 WL 381789, at *1. Again, an unequivocal statement that the decision to determine total and permanent disability is vested in the Trustees. Thus, unlike the statements relied on by Defendant in the present case, the language in *Zuckerbrod* and *Glavan* provide express and unambiguous discretionary authority to the plan administrator or Trustee to determine nursing care benefits or disability benefits, respectively.

Any discretion conferred by the three statements cited by Defendant in the instant case is ambiguous at best. As previously mentioned, "any ambiguities must be construed against the administrator and in favor of the party seeking judicial review, particularly in a situation (such as the present one) where the plan administrator is also the party responsible for paying the benefits at issue." *Arthurs*, 760 F.Supp. at 1098 (S.D.N.Y.1991). Furthermore, "the 'vast majority' of cases decided since *Firestone* in which ERISA plans have been found to grant discretionary authority have involved much more clear and explicit language regarding the scope of discretion." *Kinstler*, 1997 WL 401813, at *6 (finding language requiring submission of "satisfactory proof of Total Disability" insufficient to trigger arbitrary and capricious standard of review). Accordingly, the Court will examine Fortis' decision to deny Plaintiff benefits under a de novo standard of review. However, as will be readily apparent, the standard of review applied is not determinative of Defendant's motion or Plaintiff's claim.

## IV. DENIAL OF BENEFITS

There is no dispute that Fortis' denial of benefits turned upon its consideration of the plan's second prong definition of "Total Disability" applicable after the first 36 months of any one period of "Total Disability." Under the plan, Plaintiff is totally disabled if she was "unable to perform the material duties of any and every gainful occupation or employment for which the person is or becomes reasonably fitted by education, training or experience." (Def.'s 56.1 ¶ 21.) Thus, the only issue before this Court is whether there is a genuine issue of material fact as to Plaintiff's alleged disability.

### 1. Plaintiff's Medical Records

The insured has the burden of proving disability as defined by the policy. *George v. First Unum Life Ins. Co.*, No. 93 Civ. 2916, 1996 WL 701018, at *2 (S.D.N.Y. Dec.5, 1996); *see also Orgeron*, 1995 WL 708688, at *6 (issue was whether plaintiff satisfied Plan's definition of supervisory, not whether his duties were supervisory in nature). In support of Plaintiff's claim that she is totally disabled as a result of her back injury suffered in April 1989, Plaintiff submitted medical records from her chiropractor, Bruce Silber, D.C. It is noteworthy that Plaintiff's injury did not necessitate hospital care or treatment from an Orthopedist. In fact, Plaintiff only sought treatment from her chiropractor. A chiropractor is not a medical doctor and a chiropractic opinion is not accorded the same weight and respect as a formal medical opinion. *See, e.g., Diaz v. Shalala*, 59 F.3d 307, 312–14 (2d Cir.1995) (chiropractors are not considered "treating physicians" within the meaning of the Social Security Act). However, a chiropractic opinion is relevant with respect to injuries of the lumbar area as involved herein.

Records from Plaintiff's own chiropractor, Dr. Silber, indicate that as of December 1, 1989, Debra Barnable was not totally disabled from "any other job," and that patient was able to return to part-time work as of December 15, 1989. (Def.'s Vol. I, Ex. E.) Plaintiff's prognosis was apparently perceived by Dr. Silber to be good, as he checked off "yes" to the question: "Do you expect a fundamental or marked change in the future?" However, he was unable to determine when the patient would sufficiently recover to perform her duties. (Def.'s Vol. I, Ex. E.) A subsequent examination on August 30, 1990, revealed that the patient was ambulatory with moderate limitations, specifically that sitting causes pain, and that her prognosis was improved. (Def.'s Vol. I, Ex. E.) Plaintiff was seen by Dr. Silber on approximately four other occasions with identical results reported. (Def.'s Vol. I, Ex. E.) Thus, although the records show that Plaintiff's physical impairment caused her moderate limitations and that she was incapable of excessive sitting, lifting or bending, she nevertheless was capable of returning to part-time work by December 15, 1989, and her status apparently improved with each visit to Dr. Silber. (Def.'s Vol. I, Ex. E.) Dr. Silber expressly indicated Plaintiff's total disability spanned from April 27, 1989, through December 14, 1989. As of December 15, 1989, Plaintiff was considered only partially disabled and was capable of returning to part-time work. (Def.'s Vol. I, Ex. E.) On November 25, 1992, Plaintiff's last reported visit to Dr. Silber, he opined that a job modification would enable plaintiff to work with her impairment. (Def.'s Vol. I, Ex. E.)

In August 1993 Fortis had Debra Barnacle examined by a medical doctor, Dr. Silberman, whose orthopedic examination did not disclose any abnormalities related to her musculoskeletal system. Range of motion was noted as full and free in all directions without any limitations. Dr. Silberman examined an MRI film of the lumbrosacral spine performed in April of 1990, and found the film to be within normal limits. Additionally, Dr. Silberman reported that Plaintiff had no disability in connection with her injury of April 27, 1989, and that she could return to employment as prior to the accident. (Def.'s Vol. II, Ex. M.)

Dr. Silber was contacted by Fortis and was asked specific questions in a letter dated September 10, 1993. (Def.'s Vol. II, Ex. N.) The first question, to which Dr. Silber responded "no", was, "[i]n your opinion is Ms. Barnable presently disabled for any and every gainful occupation as defined above?" The policy definition of total disability was included in the letter. (Def.'s Vol. II, Ex. N. & Ex. O.) Dr. Silber did not agree with Dr. Silberman's conclusions that there is no objective evidence substantiating Ms. Barnable's disability related to her lumbosacral spine in connection with her injury of April 29, 1989, and further disagreed that plaintiff was able to return to work without any limitation. Dr. Silber stated that a "return to work in a full duty position ... would probably worsen her condition to a status of total disability." (Def.'s Vol. II, Ex. O.)

Further, Rehabilitation Services, at Fortis' behest, performed a vocational analysis report to ascertain whether, given Plaintiff's medical history, vocational/educational history, skills and aptitudes, there were any employment opportunities for the plaintiff in her regional area. The Report concluded that Plaintiff was employable in her area of Long Island, New York, at a salary comparable to her earnings at the time of her injury. (Pl.'s Ex. G.)

In determining Plaintiff's disability, Defendant Fortis properly considered all the medical evidence presented by Ms. Barnable and the reports of Dr. Silberman and Rehabilitation Services. *See, e.g., Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 47 (3d Cir.1993) (reasonable for administrator to decide to terminate benefits on basis of independent evaluations by doctors chosen by plan, rather than the testimony of claimant's physician); *Lugo v.*

*Employees Retirement Fund of the Illumination Prods. Indus.*, 529 F.2d 251, 256 (2d Cir.1976) (affirming denial of benefits based on examination by Fund doctors); *Glavan*, 1997 WL 381789, at *3 (granting defendant summary judgment based on trustees referral to medical doctors upon whose report trustees relied in denying benefits); *Vursanaj v. Building Serv. 32B-J Health and Pension Fund*, 1995 WL 590616, at *4 (S.D.N.Y.1995) (granting defendant summary judgment as Trustees were not required to make findings regarding how plaintiff's physical condition would impact on her ability to work and Trustees were entitled to rely on medical evidence presented by doctors paid by the defendant). Plaintiff has not presented any additional evidence for this Court to consider. *See DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61 (2d Cir.1997).

Even after considering the evidence de novo, and not affording the Defendant deference in determining Plaintiff's eligibility, the Court concludes that there is no genuine issue of material fact respecting Plaintiff's failure to present evidence establishing her disability, as defined under the Plan. *See Mitchell v. CIT Group Holdings*, No. 96 CV 6153, 1998 WL 760337, at *4 (E.D.N.Y. Sept.1, 1998) (granting defendant's motion for summary judgment because plaintiff's evidence of disability was insufficient to create a genuine issue of material fact); *Bennett*, 1998 WL 213199, at *3 (granting defendant summary judgment after finding plaintiff failed to present evidence of total disability, not just disability to continue present occupation, even if viewed de novo).

Moreover, Barnable's own medical professional deemed her not disabled as per the definition provided in the Plan. Accordingly, Defendant's motion for summary judgment is hereby granted.

## V. ATTORNEYS' FEES AND COSTS

 Defendant also moves for an award of costs and expenses incurred in bringing this motion and defending this suit, including reasonable attorneys' fees. An award of attorneys' fees in an ERISA case is governed by 29 U.S.C. § 1132(g)(1), and is guided by five factors, including, "(1) the degree of offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' position, and (5) whether the action conferred a common benefit on a group of pension plan participant." *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987) (citing *Ford v. New York Central Teamsters Pension Fund*, 506 F.Supp. 180, 183 (W.D.N.Y.1980)). Plaintiff's claim was not frivolous in nature, nor brought in bad faith, and awarding fees would not serve a salutary purpose in this instance. Accordingly, Defendant's motion for costs and fees is hereby denied.

## CONCLUSION

For all the aforementioned reasons, it is hereby Ordered that Defendant's motion for summary judgment dismissing Plaintiff's Debra Barnable's complaint with prejudice is granted in its entirety. Defendant's motion for costs and attorneys' fees is denied in its entirety. The Clerk of the Court is directed to close the case.

SO ORDERED.