**Gerard P. WINTER, Plaintiff,**

v.

**The HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendants.**

**No. 01–CV–2416(ADS)(ETB).**

United States District Court, E.D. New York.

March 22, 2004.

Brecher, Fishman, Pasternack, Popish, Feit, Heller, Rubin & Reiff, P.C. New York, NY (Christopher D. Latham, of Counsel), for Plaintiff.

Brown Raysman Millstein, Felder & Steiner LLP, New York, NY (Brian D. Sullivan, of Counsel), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Gerard P. Winter ("Winter" or the "plaintiff") commenced this action under the provisions of the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1001 et seq., alleging that the defendant The Hartford Life and Accident Insurance Company ("Hartford" or the "defendant") improperly denied long term disability benefits to him. Presently before the Court is a motion for summary judgment by Hartford.

## I. BACKGROUND

Winter was employed as a money market broker with United News & Media and their Affiliates ("United News") from prior to July 1, 1997 until on or about December 2, 1998. Pursuant to his employment by United News, Winter was a participant in an employee welfare benefit plan (the "Plan") which was sponsored by his employer. The benefits provided under the Plan included long-term disability benefits which are provided through a group insurance policy, GL/GLT 208118 (the "Group LTD Policy"), issued by Hartford to the plaintiff's employer, United News.

On or about December 2, 1998, the plaintiff ceased working for United News. On or about April 23, 1999, the plaintiff submitted a claim for long-term disability benefits pursuant to the terms of the Group LTD Policy (the "Claim"). In this Claim, the plaintiff indicated that his "severe back pain" made him unable to work. In particular, the plaintiff indicated that the "constant and continued sitting [and] lack of movement [was] aggravating [his] condition." Moreover, in the accompanying "Attending Physician's Statement of Disability," the plaintiff's treating physician Ralph C. Marcove, M.D. ("Dr.Marcove") indicated, among other things, that Winter suffered from Marie Strumpel Disease, which is a debilitating disease of the spine.

On August 13, 1999, Hartford determined that it would approve the plaintiff's claim for long-term disability benefits based on a determination that he was totally disabled for his own occupation "at th[at]time." By letter dated August 17, 1999, Maryann Iannettone ("Iannettone"), a claims examiner for Hartford, advised the plaintiff that his claim for long-term disability benefits had been approved. This letter indicated, among other things, that the benefit payments would continue so long as the plaintiff met the policy definition of "total disability" which was defined:

**Total Disability or Totally Disabled** means that you are prevented by:

(1) accidental bodily injury;

(2) sickness;

(3) mental illness;

(4) substance abuse; or

(5) pregnancy,

from performing the Essential Duties of Your Occupation and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.

Thereafter, Hartford began paying long term disability benefits to the plaintiff in the gross amount of $5,500.00 per month (minus reductions for other income benefits) effective from March 3, 1999.

On March 22, 2000, John Acampa, M.D. ("Dr.Acampa") submitted an "Attending Physician's Statement of Continuing Disability" in which he indicated that his primary diagnosis was "Anklosing Spondylitis" which caused "limited mobility of [his] neck and back."

On April 12, 2000 and April 13, 2000, investigators hired by Hartford observed and monitored Winter's activities. According to the investigation report and accompanying surveillance video, Winter was observed, among other things, driving his car, doing errands, walking, bending and engaging in other physical activities at a local boat yard. Hartford attempted to contact Dr. Acampa, the plaintiff's physi-

cian, regarding the surveillance video tape but was unsuccessful.

In a letter dated July 7, 2000, Iannettone advised Winter that Hartford had completed its review of his claim for benefits and had determined that he no longer met the definition of total disability. This letter indicated that Hartford's decision was based on, among other things, (1) the Claim; (2) the Claimant Questionnaire form dated March 1, 2000 in which the plaintiff indicated that his activities during a typical day included "some morning stretching, walking short distances, some local driving, reading and watching T.V."; (3) the Physical Aspects of the plaintiff's occupation which included "occasional standing and keyboard/repetitive hand motion and continuous sitting"; and (4) the above mentioned surveillance video and Special Investigative Reports dated April 14, 2000 and May 4, 2000. The plaintiff was informed that his long term disability benefits would be terminated as of May 1, 2000. This letter also indicated to the plaintiff that he can appeal Hartford's decision to terminate the benefits and supplement his file with additional information.

On or about September 6, 2000, the plaintiff requested a review of Hartford's determination that he was no longer eligible for benefits and submitted additional documentation in connection with his request for review. This additional documentation included Dr. Acampa's treatment notes from a period of December 14, 1999 through May 25, 2000; a letter dated May 23, 2000 and November 15, 2000 from Catherine Swanson Giuffre, M.S.W., C.S.W.; a letter dated September 16, 2000 from Dr. Acampa; and a letter dated October 30, 2000 from Howard M. Boskey, M.D.

On or about December 20, 2000, Shelley Worley ("Worley"), a Behavioral Healthcare Manager reviewed the plaintiff's claim file which included the original application, the surveillance tape and the material submitted through the appeal. In her "Summary Detail Report" Ms. Worley concluded, among other things, that "if [the plaintiff] were provided a simple adjustable workstation he would be able to perform his desk work and phone work while being allowed to change his position as needed. There are documents provided with the appeal that indicate limitations due to · his pain and his depression but these statements are totally refuted by the physical evidence on the tape .…" Summary Detail Report dated Dec. 20, 2000.

In a "Medical Report" dated January 1, 2001, Dr. George Kazda, an Associate Medical Director for Hartford, concluded that "Mr. Winter has the functional capacity to engage in sedentary occupation on full time basis." Dr. Kazda acknowledged Dr. Acampa's letter dated September 16, 2000 in which Dr. Acampa indicated, among other things, that Winter complained of back pain which was aggravated by sitting and walking and that he could only tolerate walking half a block and with severe pain, standing for ten minutes at a time and sitting for five minutes at a time. However, Dr. Kazda concluded that "[Dr. Acampa's] information is in marked contrast to photographic and video surveillance evidence obtained on Mr. Winter in April of 2000."

Thereafter, by letter dated January 25, 2001, Hartford indicated that it affirmed its earlier decision denying benefits to the plaintiff.

The plaintiff commenced this action alleging that Hartford improperly denied long term disability benefits to him. Presently before the Court is Hartford's motion for summary judgment. This motion requires the Court to (1) determine the standard of review the Court must use in evaluating Hartford's decision to deny the

plaintiff long term disability benefits; and (2) using that standard, determining whether, as a matter of law, Hartford had a right to deny benefits to the plaintiff.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, a district court must weigh several considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim. *Gallo v. Prudential Residential Servs., Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). The Second Circuit indicated that: (1) the moving party carries the burden to demonstrate that no genuine issue respecting any material fact exists; (2) all ambiguities and inferences must be resolved in favor of the non-moving party; (3) the moving party may obtain summary judgment by showing that no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight; and (4) the trial court's duty is confined to issue finding and does not extend to issue resolution. *Id.; see also B.F. Goodrich v. Betkoski*, 99 F.3d 505, 522 (2d Cir.1996). In addition, a court should be mindful in such a case that unresolved issues must be material in order to survive summary judgment, and that "the mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

### B. Determining the Standard of Review of Denial of Benefits

The Supreme Court has held that "a denial of benefits challenged under [29 U.S.C. § 1132(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). Where an ERISA covered benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits, the administrator's decision will not be disturbed unless it is arbitrary and capricious. *See Reichelt v. Emhart Corp.*, 921 F.2d 425, 431 (2d Cir.1990), *cert. denied*, 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *see also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995). The "trustee or administrator should bear the burden of proving that the 'arbitrary and capricious' standard should apply in a given case." *Barnable v. First Fortis Life Ins. Co.*, 44 F.Supp.2d 196, 202 (E.D.N.Y.1999) (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, No. 96 Civ. 921, 1997 WL 401813, at *4 (S.D.N.Y. July 16, 1997)). Furthermore, "any ambiguities must be construed against the administrator and in favor of the party seeking judicial review." *Arthurs v. Metropolitan Life. Ins. Co.*, 760 F.Supp. 1095, 1098 (S.D.N.Y.1991).

Although no "magic words" are required to trigger one or the other level of review, "when making this determination, courts must examine the relevant plan documents to determine whether the administrator is given the power to construe doubtful terms or to resolve disputes over benefit eligibility." *Zisel v. Prudential Ins. Co. of Amer., et al.*, 845 F.Supp. 949, 950 (E.D.N.Y.1994); *see also Jordan v.*

*Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995) ("While magic words such as discretion and deference may not be absolutely necessary to avoid a stricter standard of review, their presence ... is certainly helpful in deciding the case." (internal citations and quotations omitted)).

■ Here, it is undisputed that Hartford acts as the claims administrator with respect to long-term disability benefits under the Plan. However, the parties disagree as to which plan documents should be used to determine whether Hartford, as the claims administrator, has discretionary authority to determine eligibility for benefits. In particular, Hartford claims that the terms set forth in the Group LTD govern. On the other hand, the plaintiff maintains that the Summary Plan Description (the "SPD") governs.

The Group LTD Policy states in part:

**Who Interprets Policy Terms and Conditions?**

The Hartford has *full discretion and authority* to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy. (Emphasis added).

However, the plaintiff argues that because the SPD only provides that "[t]he Hartford reserves the right to determine if your proof of loss is satisfactory," there is "[n]o expression of a clear intent to vest the administrator with discretionary authority ... and a *de novo* review should apply...." Plfs. Mem. in Opp. p. 6. The Court disagrees.

■ Under ERISA, employers offering pensions and benefits plans covered under its statutory scheme must distribute a Summary Plan Description ("SPD") to participants in those plans. *Poccia v. Prudential Ins. Co.,* 74 F.Supp.2d 240, 247 (E.D.N.Y.1999) (citing *Heidgerd v. Olin Corp.,* 906 F.2d 903, 907 (2d Cir.1990)); *see*

*also* 29 U.S.C. § 1024(b)(1) (Employers must furnish "each participant with a copy of the summary plan description."). This SPD must "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan" 29 U.S.C. §§ 1022(a).

■ However, "by definition, a summary will not include every detail of the thing it summarizes," *Sprague v. General Motors Corp.,* 133 F.3d 388, 401 (6th Cir. 1998). Therefore, "[a]n omission from the summary plan description does not, by negative implication, alter the terms of the plan itself." *Id.* Here, the Group LTD Policy expressly indicates that "[t]he Hartford has *full discretion and authority* to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Emphasis added). This language does not conflict with relevant terms in the SPD. Accordingly, the Court must apply the arbitrary and capricious standard to determine whether Hartford improperly denied benefits to the plaintiff.

■ In any event, even if the two terms were inconsistent, the "plaintiff[ ] would still have to show that [he] either relied to [his] detriment on the allegedly inconsistent provisions, or [was] otherwise prejudiced by those provisions." *Pocchia v. Prudential Ins. Co.,* 74 F.Supp.2d at 249; *see also Manginaro v. Welfare Fund of Local 771,* 21 F.Supp.2d 284, 296 (S.D.N.Y. 1998) ("Permitting a plaintiff to prevail upon a showing of either detrimental reliance upon, or possible prejudice flowing from, a faulty SPD, also appears consistent with the approach taken by the majority of courts to have considered this issue."). In this case, the plaintiff has not indicated that he detrimentally relied on the SPD or that he was otherwise prejudiced by the provisions of the SPD. *See Pocchia,* 74 F.Supp.2d at 249.

## C. Application of the "Arbitrary and Capricious" Standard.

■ Under the "arbitrary and capricious" standard of review, this Court may overturn a decision to deny benefits only if the decision was " 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (quoting *Abnathya v. Hoffmann—La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993)). "Substantial evidence is 'such that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] ... requires more than a scintilla but less than a preponderance.' " *Todd v. Aetna Health Plans,* 62 F.Supp.2d 909, 913 (E.D.N.Y. 1999) (quoting *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir.1995)); *see also Pagan,* 52 F.3d at 440 ("This scope of review is narrow, thus [the court is] not free to substitute [its] own judgment for that of [plan administrator] as if [the court were] considering the issue of eligibility anew.").

■ A review of the record reveals that a significant factor in Hartford's conclusion that the plaintiff is not entitled to benefits was the above mentioned surveillance tape. Both Dr. Kazda and Worley indicated that the surveillance tape contradicted the plaintiff's medical records. However, the parties dispute the nature of the activities observed in the tape, in addition to the lengths of time, distance and editing techniques. In the Court's view, the surveillance video alone, which was approximately twenty minutes in duration and purports to represent two full days of activity, does not constitute substantial evidence supporting the denial of long term disability benefits.

Moreover, Hartford's final decision to deny benefits to the plaintiff was based largely in part on Dr. Kazda's January 1, 2001 Medical Report. Dr. Kazda's Medical Report concluded that the video surveillance contradicted Dr. Acampa's conclusion, which was memorialized in a September 16, 2001 letter:

> [Winter's] spine immobility has caused him to have a permanent impairment involving his muscular skeletal system and this patient is totally disabled. He has severe limitations on standing, sitting and ambulating. He requires narcotics and anti-inflammatories on a daily basis to control his pain. His ankylosing spondylitis has been a progressive disease, poorly controlled by antiinflammatories and analgesics. Progressive ankylosing spondylitis has yielded a condition in which he is totally disabled from his occupation as a bonds trader.

Letter from John W. Acampa, M.D. to Christopher D. Latham, Esq., dated Sept. 16, 2001.

■ Because Dr. Kazda never examined the plaintiff, his opinions about Winter's medical condition are entitled to less weight than the plaintiff's treating physicians who were in a better position to evaluate the extent and severity of her pain. *See Durr v. Metropolitan Life Ins. Co.,* 15 F.Supp.2d 205, 213 n. 2 (D.Conn. 1998) (Although not binding, Social Security standards are "nonetheless instructive" in ERISA cases.) (citations omitted); *Piscottano v. Metropolitan Life Ins. Co.,* 118 F.Supp.2d 200, 212 (D.Conn.2000); *see also Turay v. Aetna U.S. Healthcare,* 160 F.Supp.2d 557, 563 (S.D.N.Y.2001). There are triable issues of fact that preclude summary judgment. Among these issues are Dr. Kazda's report which is conclusory in nature in that it fails to specifically address the records of Dr. Acampa and the plaintiff's other treating physicians and the fact that the parties dispute the contents of the surveillance tape.

Drawing all inferences in favor of the non-moving party, the Court finds that

Hartford failed to satisfy its burden of demonstrating that no genuine material issue of fact exists. Accordingly, the defendant's motion for summary judgment is denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendant's motion for summary judgment is **DENIED**; and it is further

**ORDERED**, that this case is to remain on the twenty-four hour non-jury reserve trial calendar.

**SO ORDERED.**